# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-2881

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | Western District of Missouri. |
| | * | |
| Tony L. Mann, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted:  December 11, 2002

Filed:  January 17, 2003

_____

Before BOWMAN, MORRIS SHEPPARD ARNOLD, and RILEY, Circuit Judges.

_____

BOWMAN, Circuit Judge.

The appellant, Tony L. Mann (Mann), pled guilty to being a felon in possession of a firearm. See 18 U.S.C. § 922(g)(1) (2000). On appeal, he urges that the District Court[1] erred when it enhanced his base-offense level by four levels pursuant to § 2K2.1(b)(5) (2001) of the United States Sentencing Guidelines (U.S.S.G.) because the court determined that he had possessed a firearm in connection with another felony. Mann contends the enhancement was erroneous because, notwithstanding the

_____

[1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

plain language of § 2K2.1(b)(5), which makes the enhancement applicable if "the defendant used or possessed any firearm or ammunition in connection with another felony," the government was unable to prove that he used or possessed any of the firearms specifically identified in the indictment in connection with another felony offense. We disagree and affirm.

## I.

The facts of this case are straightforward. Mann, who police suspected of methamphetamine manufacturing and distribution, was observed by two Springfield, Missouri, police officers riding a scooter and, a short while later, a bicycle. The officers knew that Mann was a convicted felon and that he had pulled a pistol on a citizen several weeks earlier. When the officers signaled for Mann to stop his bike, he took flight and the officers pursued him on foot. The chase wove between several houses and, when Officer Shanholster caught sight of Mann, he ordered him to stop and show his hands. Mann did show his hands, but in his hands he held a firearm that was pointed at Officer Shanholster, who testified during the felon-in-possession sentencing hearing that Mann then fired a single shot at him. Shortly thereafter, Mann was surrounded at his home and eventually taken into custody. Although a number of firearms were discovered in his home, none could be positively identified as the one that Mann used to assault Officer Shanholster.

## II.

On appeal, a district court's interpretation of the sentencing guidelines is subject to de novo review while its findings of fact are reviewed for clear error. United States v. Auginash, 266 F.3d 781, 785 (8th Cir. 2001). Mann's contention that § 2K2.1(b)(5) does not mean what its plain language says presents a purely legal question, and we review the District Court's decision de novo.

Unless the sentencing guidelines provide a special definition of the particular term whose meaning is in issue, we give the language of the guidelines its ordinary meaning. Chapman v. United States, 500 U.S. 453, 462 (1991). Section 2K2.1(b)(5) provides, in relevant part, for a four-level enhancement in the defendant's offense level "[i]f the defendant used or possessed any firearm or ammunition in connection with another felony offense." Although § 2K2.1(b)(5) contains no terms of art or otherwise ambiguous language, Mann urges that § 2K2.1(b)(5)'s reference to "any firearm" does not in fact mean "any firearm." Rather, according to Mann, "any firearm" must be read to mean one of the firearms for which he was charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

Mann's argument is novel, but we conclude he is trying to "make the weaker argument defeat the stronger."[2] Section 2K2.1(b)(5) is a far-reaching enhancement and, in United States v. Scolaro, we had occasion to consider its scope and noted: "[t]o summarize, the § 2K2.1(b)(5) adjustment is warranted in this case if [the defendant] used or possessed any firearm in connection with another felony offense." United States v. Scolaro, 299 F.3d 956, 957 (8th Cir. 2002). Scolaro demonstrates the sweep of § 2K2.1(b)(5) for, in that case, we upheld the application of the enhancement based on a defendant's violent assault (without a firearm) that enabled him to steal the victim's firearms. Even the dissent in Scolaro acknowledged § 2K2.1(b)(5)'s breadth when it noted that "the § 2K2.1(b)(5) sentence enhancement takes into account the increased risk of violence whenever guns are possessed by persons committing felonies." Id. at 959 (Bright, J., dissenting).

Moreover, § 2K2.1(b)(5)'s reference to "any firearm" is unambiguous. The Eleventh Circuit recently observed that "[t]he Sentencing Guidelines themselves evince an understanding of th[e] distinction" between "any" and "the." United States

---

[2]Plato, Apology, in The Last Days of Socrates 18c (Hugh Tredennick & Harold Tarrant, trans., Penguin Classics 1993).

v. Sutton, 302 F.3d 1226, 1227 (11th Cir. 2002). Hence, the Eleventh Circuit noted that although § 4B1.4(b)(3)(A) provides for an enhancement when an Armed Career Criminal "used or possessed the firearm or ammunition in connection with a crime of violence or controlled substances offense," § 2K2.1(b)(5) provides for an enhancement when the defendant "used or possessed any firearm or ammunition in connection with another felony offense." U.S.S.G. §§ 4B1.4(b)(3)(A), 2K2.1(b)(5) (emphasis added); see Sutton, 302 F.3d at 1227-1228. Thus, the Sutton Court concluded that:

> When any firearm or ammunition will do, the Guidelines use the nonspecific phrases 'any firearm or ammunition,' *see, e.g.* USSG § 2K2.1(b)(5), or 'a firearm or ammunition,' *see, e.g.* § 2K1.1(c)(1), rather than the specific phrase 'the firearm or ammunition. The use of 'the firearm or ammunition' in § 4B1.4(b)(3)(A), then, indicates that this Guideline applies only to a particular firearm.

Sutton, 302 F.3d at 1227-28. We think this reasoning is applicable here and hold that the obvious corollary is also true. That is, the use of the term "any firearm or ammunition" in § 2K2.1(b)(5) indicates that this guideline applies to any firearm and not merely to a particular firearm upon which the defendant's felon-in-possession conviction is based. Our holding is bolstered by two other factors.

First, the Guidelines' instructions for computing a defendant's offense level indicate an intent that all relevant conduct be considered. See United States v. Kenney, 283 F.3d 934, 938 (8th Cir.) (observing that the Guidelines' "expansive language indicates that the Commission intended to include enhancements for every applicable aspect of the criminal conduct"), cert. denied, 123 S.Ct. 270 (2002); U.S.S.G. § 1B1.1, cmt. n.4 ("offense level adjustments" are "cumulative" unless otherwise specified). Here, Mann's shooting at Officer Shanholster while attempting to evade arrest is made relevant to his sentencing on felon-in-possession charges by the clear language of § 2K2.1(b)(5), which provides for an enhancement of the

-4-

offense level if the defendant "used or possessed any firearm . . . in connection with another felony offense." Mann's proposed construction of § 2K1.1(b)(5) would defeat these sentencing principles insofar as his construction would not allow his offense level to be determined cumulatively and would preclude the application of an adjustment for his attempt to evade arrest by firing at the pursuing officer. The plain language of the Guidelines requires that we reject this result.

Second, Mann's proposed reading would lead to absurd results. Not surprisingly, his proposed construction would benefit those criminals, such as Mann, who have the presence of mind to dispose of whatever firearm they used or possessed in connection with another felony before being apprehended. In such a case, the government would be precluded from seeking § 2K2.1(b)(5)'s enhancement even when it is undisputed that the defendant so used or possessed a firearm, unless the government could actually prove it was one of the weapons for which the defendant was charged under 18 U.S.C. § 922(g)(1). We believe the language of § 2K2.1(b)(5) forecloses such a result, and we reiterate our holding that "any firearm" means "any firearm." That is, when a defendant is convicted under § 922(g)(1), a § 2K2.1(b)(5) enhancement applies so long as the government can prove that the defendant used or possessed any firearm in connection with another felony offense.

In this case, the enhancement was appropriate because Mann fired at a pursuing Springfield, Missouri, police officer shortly before Mann was arrested at his home, where a number of firearms were found. Mann's actions constituted felonies under Missouri law and he was later convicted of Armed Criminal Action and Assault of a Law Enforcement Officer in the First Degree. See Mo. Rev. Stat. §§ 565.081, 571.015 (2000). Therefore the District Court properly applied § 2K2.1(b)(5)'s four-level enhancement to Mann's base-offense level when sentencing him on the § 922(g)(1) felon-in-possession conviction.

## III.

Based on the foregoing discussion, we affirm the judgment of the District Court.

MORRIS SHEPPARD ARNOLD, dissenting.

I respectfully dissent from the judgment of the court because I do not agree that U.S.S.G. § 2K2.1(b)(5) (2001) allows for the four-level increase in the offense level assessed in this case . I am not sure, in the first place, that the guideline provision at issue here even has a plain meaning, but if I had to say that it did and what it was, I would come to a conclusion opposite from the one that the court reaches. Meaning, plain or otherwise, must be gleaned from context, and the court gives the context of the words that it is construing no significance at all. Here, the context makes it relatively plain to me that the word "any" refers to any firearm that is mentioned in the indictment.

For one thing, § 2K2.1(b)(5) is found in the part of the guidelines entitled "Offense Conduct," so the presumption arises that, at least in cases of doubt, the sub-section has to do with conduct that occurred in the course of committing, planning, or concealing the offense that is charged. This presumption draws strength (indeed, becomes virtually irrebuttable) when we notice that § 2K2.1(b)(5) is one of a group of sub-sections that U.S.S.G. § 2K2.1(b) labels "Specific Offense Characteristics": Surely this must mean characteristics that are specific to the offense with which the defendant is charged. There is nothing whatever in the record to connect the assault on Officer Shumholster with the weapons described in the indictment, and the government admits as much.

In rendering its judgment, moreover, the court overlooks § 2K2.1(b)(4), which immediately precedes the sub-section at issue here, and which provides a two-level

increase "[i]f any firearm was stolen." In this sub-section, the phrase "any firearm" quite obviously refers to a firearm charged in the indictment, otherwise it makes no sense. It is a familiar principle of statutory construction that identical phrases in a statute, particularly when they occur in close proximity, are ordinarily to be given identical meanings. *See*, *e.g.*, *Ratzlaf v. United States*, 510 U.S. 135, 143 (1994); *United States v. Dinwiddie*, 76 F.3d 913, 926 (8th Cir. 1996), *cert. denied*, 519 U.S. 1043 (1996). The court does not refer to this principle or explain why it is not applicable in the present case.

The court relies on *United States v. Scolaro*, 299 F.3d 956 (8th Cir. 2002), to support its conclusion, but I suggest that the case is inapposite because it involved the question of what the phrase "another felony offense" means. There is no hint in that case that the court thought that the other felony could be one which was unconnected to the firearms described in the indictment, and there could not have been such a hint, because it was conceded by all that those very firearms were in fact involved in the events that the court determined constituted "another felony offense." *See id.* at 957-58. I can likewise glean no relevant guidance from the holding in *United States v. Sutton*, 302 F.3d 1226 (11th Cir. 2002) (per curiam), a case from another circuit, which the court reads backwards to provide a makeweight for its result.

The court also opines that the defendant's proposed reading leads to absurd results, apparently because he might escape an increase in his offense level by ridding himself of a particular firearm. He might indeed do that, but I see nothing absurd in the fact that he would thereby escape punishment. An offender will frequently evade prosecution or escape conviction for a crime involving possession by ridding himself or herself of the relevant object: The government's case will simply fail for lack of proof.

In sum, it seems to me more than arguable that the plain meaning of § 2K2.1(b)(5) renders it inapplicable to Mr. Mann's case. At the very least, I believe

that his proposed construction is more reasonable than the government's. Even if it were not, it is familiar law in this circuit that "[w]here there are two plausible readings of a guideline provision, we apply the rule of lenity and give the defendant the benefit of the reading that results in the shorter sentence." *United States v. Oetken*, 241 F.3d 1057, 1060 (8th Cir. 2001); *see also United States v. Hutton*, 252 F.3d 1013, 1017 (8th Cir. 2001); *United States v. Pharis*, 176 F.3d 434, 436 (8th Cir. 1999). The court omits to mention these cases and does not explain why they do not govern the instant situation. Since I cannot see how the meaning that Mr. Mann wants us to attribute to the relevant guideline can possibly be characterized as implausible, I respectfully dissent from the court's judgment.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.