# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-3455

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Northern District of Iowa. |
| Sheila Ann Anton, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: May 13, 2004
Filed: August 16, 2004

_____

Before LOKEN, Chief Judge, SMITH, Circuit Judge, and DORR,[1] District Judge.

_____

SMITH, Circuit Judge.

Sheila Anton pleaded guilty to possession of 864 pills containing a total of 51.84 grams of pseudoephedrine, in violation of 21 U.S.C. § 841(c)(2). The district court[2] sentenced Anton to seventy months' imprisonment pursuant to the United States Sentencing Guidelines ("U.S.S.G.") § 2D1.11. Anton appeals her sentence

_____

[1] The Honorable Richard E. Dorr, United States District Judge for the Western District of Missouri, sitting by designation.

[2] The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa.

contending that she should have received a safety-valve reduction and a downward departure. We affirm.

## I.

On July 10, 2002, law enforcement officers apprehended Anton at a Wal-Mart in Dubuque, Iowa. Police had discovered that Darlis Lyle Miller and Anton had purchased eighteen boxes of pseudoephedrine tablets from the store. After police read Anton her *Miranda* rights, Anton admitted that she bought pseudoephedrine pills with Miller and traded the pills for methamphetamine. Anton also admitted to purchasing large quantities of pseudoephedrine tablets from several discount stores over the prior year. Anton used personal checks to purchase the pseudoephedrine, and she was always accompanied by Miller. There was no evidence that Anton ever participated in methamphetamine manufacturing or distributing activities.

Anton was initially charged in state court. She entered into an agreement with the state prosecutor in which she was to receive a deferred judgment. When Anton appeared in state court to enter her plea, the state prosecutor notified her that her state charges had been dismissed and that her case was referred to the United States Attorney's Office for prosecution.

On October 11, 2002, Anton and Miller were charged in a one-count indictment with possessing pseudoephedrine–a List I Chemical–knowing, intending, and having reasonable cause to believe it would be used to manufacture methamphetamine, a violation of 21 U.S.C. § 841(c)(2). Trial was set for December 2, 2002.

Anton pleaded guilty on December 31, 2002. The district court entered judgment and sentenced Anton to seventy months' imprisonment on September 19, 2003. Anton was sentenced pursuant to U.S.S.G. § 2D1.11, thus the court found that Anton was not eligible for a two-level reduction under § 2D1.1(b)(6) ("safety-valve

guideline") or a § 2D1.1(a)(3) ("mitigating-role cap") base-offense-level cap. The court declined to grant Anton's motions for a downward departure. Anton timely appealed.

## II.
### A. *"Safety Valve" Sentence Reduction*

Anton contends that she should have received a safety-valve reduction under U.S.S.G. § 5C1.2, 18 U.S.C. § 3553 because she met the criteria provided. We review de novo a district court's interpretation and application of the Guidelines. *United States v. Hampton*, 346 F.3d 813, 814 (8th Cir. 2003).

A defendant sentenced under U.S.S.G. § 2D1.1 is eligible for a two-level sentence reduction if she meets certain criteria listed in § 5C1.2 of the Guidelines and her offense level is 26 or greater. *United States v. Saffo*, 227 F.3d 1260, 1273 (10th Cir. 2000).[3] Here, it is undisputed that Anton meets the § 5C1.2 criteria. However, the

---

[3] The five criteria included in the Guideline specify that:

(1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;
(2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
(3) the offense did not result in death or serious bodily injury to any person;
(4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848; and
(5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that

district court found that Anton was not eligible for the two-level reduction in U.S.S.G. § 2D1.1 because she was sentenced under § 2D1.11. We agree. Section 2D1.11 does not provide for a two-level reduction if the criteria from § 5C1.2 are met. *Saffo*, 227 F.3d at 1273; U.S.S.G. § 2D1.11. We also note that safety-valve relief is intended to avoid imposition of mandatory minimum sentences. Anton's sentence under 21 U.S.C. § 841(c)(2) did not involve imposition of a mandatory minimum sentence.

"When construing the Guidelines, we look first to the plain language, and where that is unambiguous we need look no further." *United States v. Ashley*, 342 F.3d 850, 852 (8th Cir. 2003) (citing *United States v. Andreas*, 216 F.3d 645, 676 (7th Cir. 2000); *United States v. Mann*, 315 F.3d 1054, 1055 (8th Cir. 2003) ("Unless the sentencing guidelines provide a special definition of the particular term whose meaning is in issue, we give the language of the guidelines its ordinary meaning."). Although § 2D1.1 expressly provides for a possible two-level reduction, the plain language of the applicable Guideline section–§ 2D1.11–makes no mention of the two-level safety valve reduction. We will not presume the Sentencing Commission intended otherwise.

Anton was convicted under 21 U.S.C. § 841(c)(2). Section 841(c)(2) requires her to be sentenced pursuant to § 2D1.11 of the Guidelines. Section 2D1.1 is inapplicable to the offense to which Anton pleaded guilty. Accordingly, we reject

---

the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

U.S.S.G. § 5C1.2(1)–(5).

-4-

Anton's argument that she should have received a sentence reduction under the safety valve provision of the Guidelines.[4]

## B. *Downward Departure*

Anton also argues that the district court erred in denying her motion for a downward departure which was based upon the county prosecutor's recommendation for probation. Anton also requested that the district court depart downward pursuant to U.S.S.G. § 5K2.0. She maintains that her case is outside the heartland of offenses, principally because of the application of the Guidelines to her case. She also notes the apparent incongruity in the Guidelines because a convicted manufacturer of methamphetamine can establish eligibility for safety-valve reduction while the possessor of precursors cannot.

The Sentencing Commission has recognized that there will be exceptional cases. The Introduction to the Guidelines explains:

> The Commission intends the sentencing courts to treat each guideline as carving out a "heartland," a set of typical cases embodying the conduct that each guideline describes. When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted."

*Koon v. United States*, 518 U.S. 81, 93 (1996) (quoting 1995 U.S.S.G. ch. 1, pt. A, intro. comment. 4(b)).

Anton contends that the sentencing record is not clear as to whether or not the district court believed it had the discretion to depart. Anton points to the court's language:

---

[4] Because we conclude that § 2D1.1 is inapplicable in the present case, we will not address Anton's argument concerning a mitigating-role adjustment.

[The district court]: All right. The Court is now ready to make its ruling on the departure motion with the multiple prongs . . . . The Court declines the invitation to depart downward finding this case does not fall outside the heartland of cases . . . . Based on the downward departure based on the State plea agreement, the Court finds that there is no basis to depart . . . . I also find no basis to depart because of the application of the guidelines . . . . Again, this case is not so unusual that it falls outside the heartland of cases, so the Court will not be departing in this case . . . .

[Government]: . . . Just to clarify, you recognize your authority to depart. You just chose not to.

[The district court]: Exactly.

(Sentencing Transcript at 35–38).

The district court refused to depart, and a rational reading of the record indicates that the court was quite clear about its authority to do so. "A refusal to depart by a sentencing court that is aware of its authority to do so is not appealable." *United States v. Booker*, 186 F.3d 1004, 1007 (8th Cir. 1999). Given the clarity of the record, we will not review the court's downward departure denial.

## IV.
For the reasons indicated, we affirm Anton's sentence.

_____