[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
November 30, 2005
THOMAS K. KAHN
CLERK

No. 05-11318

D. C. Docket No. 04-00194-CR-WS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CARLOS DEON WILLIAMS,
a.k.a. Bodacious,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Southern District of Alabama

————————————————

**(November 30, 2005)**

Before ANDERSON, BLACK and CARNES, Circuit Judges.

PER CURIAM:

In this Guidelines interpretation case, we examine the meaning of the word

"any" as it is used in United States Sentencing Guideline § 2K2.1(c)(1), and

conclude that it covers any firearm that is used in connection with the commission of another offense which is within the relevant conduct of the charged offense.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On January 29, 2004, Carlos Williams was arrested for shooting Eric McCants four days earlier. At the time of the arrest, the officers found two guns in Williams's car. Williams was charged in state court for the assault, and the federal grand jury indicted him for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). Williams pled guilty to possessing one of the firearms without a plea agreement. The Government did not prove that the firearm in the federal charge was the same one used in the McCants assault.

In his written objections to the Presentence Report and at sentencing, Williams objected to the calculation of his base offense level. After hearing testimony and determining by a preponderance of the evidence that the assault on McCants was relevant conduct to the federal possession charge, the district court calculated the base level by cross-referencing from the firearms guideline, § 2K2.1, to the guideline for aggravated assault, § 2A2.2.[1] The district court added ten

---

[1] The cross reference provision in § 2K2.1 instructs the court to apply § 2X1.1 if the defendant used or possessed any firearm in connection with the commission of another offense and the resulting base level is higher than it would otherwise be. U.S.S.G. § 2K2.1(c)(1). Section 2X1.1, in turn, instructs the court to use the offense level that is the same as the underlying offense. The underlying offense, in this case, would be aggravated assault, § 2A2.2.

points to the base offense level of fourteen because a firearm was discharged and the victim sustained serious bodily injury. The court subtracted three points for acceptance of responsibility. With a base offense level of twenty-one, and a criminal history level of VI, the suggested Guidelines range was seventy-seven to ninety-six months; the district court sentenced Williams to ninety-six months' imprisonment.

## II. STANDARD OF REVIEW

Williams was sentenced after the Supreme Court handed down its decision in United States v. Booker, 543 U.S. __, 125 S. Ct. 738 (2005). We review questions of law arising under the Guidelines de novo. United States v. Crawford, 407 F.3d 1174, 1178 (11th Cir. 2005). Once the district court has calculated the Guidelines correctly, we review the sentence for reasonableness. Id. at 1179.

## III. DISCUSSION

### A. The meaning of "any" in U.S.S.G. § 2K2.1(c)(1).

Williams contends that the word "any" in § 2K2.1(c)(1) is confined to any of the firearms that he was charged with possessing. Thus, he argued that the district court erroneously cross-referenced to the aggravated assault guideline, which did not involve the firearm in the federal charge. The Government counters that "any" must mean any firearm the defendant possessed, be it the ones charged or not. The

3

section in question reads:

> (c) Cross Reference
> (1)    If the defendant used or possessed *any firearm* or ammunition in connection with the commission or attempted commission of another offense, or possessed or transferred a firearm or ammunition with knowledge or intent that it would be used or possessed in connection with another offense, apply--
>> (A) § 2X1.1 (Attempt, Solicitation, or Conspiracy) in respect to that other offense, if the resulting offense level is greater than that determined above . . . .

U.S.S.G. § 2K2.1(c)(1). (emphasis added)

Although this court has not reached this issue precisely, it has discussed the meaning of the same key words used in another provision of the Guidelines, i.e. § 2K2.1(b)(5).[2] In United States v. Sutton, 302 F.3d 1226 (11th Cir. 2002), this court examined the meaning of "the firearm or ammunition" in the U.S.S.G. § 4B1.4(b)(3)(A) sentencing enhancement for § 922(g) violations. It determined that "the" meant that the firearm had to be the one which was charged in the violation of §922(g). In reaching this conclusion, the court first noted that the plain language of the guideline must be followed. Id. at 1227. Then it continued:

---

[2] Section 2K2.1(b)(5) reads: "If the defendant used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense, increase by 4 levels. If the resulting offense level is less than level 18, increase to level 18."

4

While the word "any" is general and nonspecific, the word "the" is particular and specific. The Sentencing Guidelines themselves evince an understanding of this distinction. When any firearm or ammunition will do, the Guidelines use the nonspecific phrases "any firearm or ammunition," see, e.g., USSG § 2K2.1(b)(5), or "a firearm or ammunition," see, e.g., § 2K1.1(c)(1), rather than the specific phrase "the firearm or ammunition." The use of "the firearm or ammunition" in § 4B1.4(b)(3)(A), then, indicates that this Guideline applies only to a particular firearm.

*Id*. at 1227-28.

Two other circuits have found this reasoning persuasive when interpreting parts of § 2K2.1. In the first of them, the Eighth Circuit cited Sutton approvingly when it held that § 2K2.1(b)(5) did not require the "any firearm" to be the one charged in the indictment. United States v. Mann, 315 F.3d 1054, 1056 (8th Cir. 2003). The court characterized § 2K2.1(b)(5)'s "reference to 'any firearm'" as unambiguous. Id. The court also noted that the defendant's construction of the "any" to mean the charged firearm would lead to an absurd result, i.e. it would reward those criminals who had the foresight to get rid of the weapon. Id. at 1057. Although Mann did not involve the precise provision at issue here, it did involve a provision of the same guideline that used the same key words, "any firearm." Thus, Mann is persuasive authority.

In United States v. Jardine, 364 F.3d 1200 (10th Cir. 2004), the Tenth Circuit addressed § 2K2.1(c)(1), the very provision at issue here, and determined that it

5

referred to any firearm possessed by the defendant.[3] The court started with the plain language, noting that the Guidelines did not provide a definition of the term. Id. at 1207. It cited Mann and Sutton for their discussion of the Guidelines' use of "the" and "any." Id. at 1208. It held that the term "any firearm" was unambiguous. Id. Finally, the court pointed to two further considerations: the fact that the Guidelines require the court to consider all relevant conduct when sentencing and the fact that the defendant's interpretation would lead to an absurd result for the same reason cited in Mann. Id.

By contrast, in United States v. Gonzales, 996 F.2d 88 (5th Cir. 1993), the Fifth Circuit in dicta rejected the plain meaning of "any firearm," reasoning that it did not fit with the "overall context of section 2K2.1." 996 F.2d at 92 n.6. The court reasoned that the "any firearm" must be at least related to the one charged in the indictment. Id. Like Judge Arnold in his dissent in Mann, the court pointed to the language in § 2K2.1(b)(4), which enhanced the sentence if "any firearm" was stolen, and reasoned that this can only logically be the charged firearms or it would not make sense. Id.[4]

_____

[3] The Supreme Court vacated this decision and on remand, the Tenth Circuit reinstated its opinion but remanded for resentencing consistent with Booker. United States v. Jardine, 406 F.3d 1261 (10th Cir. 2005).

[4] The context of § 2K2.1(b)(4), enhancing the offense level of the possession by two if the firearm was stolen, may suggest that it refers to the charged firearm as having been stolen.

We join the Eighth and Tenth Circuits to hold that "any firearm" truly means any firearm.[5] As we earlier held in <u>Sutton</u>, the Sentencing Commission uses "the" and "any" purposely and makes distinctions depending on which word it uses. 302 F.2d at 1227. There is nothing in the language or context of subsection (c)(1) that modifies the words "any firearm," nor is there anything in the application notes that suggests a different interpretation. Therefore, "any," as used in subsection (c)(1), can apply to firearms not named in the indictment.

B.  <u>Does the conduct used in the § 2K2.1(c) cross reference have to fall within the relevant conduct definition?</u>

The relevant conduct provision of the Guidelines expressly provides that "[u]nless otherwise specified . . . cross references in Chapter Two . . . shall be

---

However, there is no similar context in the instant § 2K2.1(c)(1) to override the plain meaning of the word "any."

[5] It is not absolutely clear where the Sixth Circuit fits with respect to these issues. In <u>United States v. Settle</u>, 414 F.3d 629 (6th Cir. 2005), reinstating in part 394 F.3d 422 (6th Cir. 2005), the Sixth Circuit seemed to agree with the Eighth Circuit in <u>Mann</u> and the Tenth Circuit in <u>Jardine</u> that "any firearm" meant any firearm used by the defendant in connection with another offense within the relevant conduct of the charged offense, see id. at 633. However, on the next page, the court seemed to also require that the firearm itself, which was used in connection with the other offense, must have some "clear connection" with the firearm possessed in the charged offense. <u>Id.</u> at 634. It is not absolutely clear that the connection between the two firearms would be deemed sufficiently clear if the only connection is that the different firearm is used in connection with another offense which is within the relevant conduct of the charged offense. If the answer to that question is in the affirmative, then the Sixth Circuit is aligned with the Eighth Circuit and the Tenth Circuit, and with our holding in this case.

determined on the basis of the following . . . [describing four categories of relevant conduct]." Section 1B1.3(a).[6] Thus, the short answer to the question is yes, the other offense cross-referenced in Section 2K2.1(c) must be within the relevant conduct of the charged offense "unless otherwise specified."

Like the question about the meaning of "any firearm," a split has developed among the circuits regarding the question of whether the cross-referenced offense in § 2K2.1(c) must be within the relevant conduct of the charged offense. The

---

[6] Section 1B1.3(a) reads:

Chapters Two (Offense Conduct) and Three (Adjustments). Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level, (ii) specific offense characteristics and (iii) cross references in Chapter Two, and (iv) adjustments in Chapter Three, shall be determined on the basis of the following:

(1)(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant;
. . .
that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.

(2) solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all acts and omissions described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction;

(3) all harm that resulted from the acts and omissions specified in subsections (a)(1) and (a)(2) above, and all harm that was the object of such acts and omissions; and

(4) any other information specified in the applicable guideline.

Seventh Circuit has consistently held that § 1B1.3's relevant conduct definition must be applied to the conduct contained in the § 2K2.1(c) cross reference. See, e.g., United States v. Jones, 313 F.3d 1019, 1022 (7th Cir. 2002). To support this reading, the Seventh Circuit cited the language of § 1B1.3, which states that cross references under Chapter Two have to fit under the relevant conduct test: "'Unless otherwise specified, . . . (iii) cross references in Chapter Two . . . shall be determined on the basis of the following [definitions of relevant conduct].'" United States v. Ritsema, 31 F.3d 559, 564 (7th Cir. 1994) (quoting U.S.S.G. § 1B1.3(a)). This language makes § 1B1.3 "a general application principle that governs both cross references in Chapter Two offenses and offense level adjustments in Chapter Three, provided those sections do not specify to the contrary." Id. The commentary to § 1B1.3, the court noted, provides that only where there are "more explicit instructions" should the relevant conduct not be used. Id. at 565. The court in Ritsema held that the language in § 2K2.1(c), "in connection with," failed to provide the necessary "more explicit instruction[]." Id. Therefore, it held that the relevant conduct requirements found in § 1B1.3 governed the use of the § 2K2.1 cross reference. Id.

Several other circuits have joined this interpretation.[7] The Tenth Circuit in Jardine married its broad interpretation of "any firearm" to the Guidelines' requirement that the cross-referenced conduct be within the relevant conduct. 364 F.3d at 1209. The Sixth Circuit also requires that the other offense cross-referenced by § 2K2.1(c)(1) be within the relevant conduct of the charged firearm offense. Settle, 414 F.3d at 633-34.

By contrast, the Fifth Circuit has held that § 1B1.3's strictures on relevant conduct do not apply to § 2K2.1(c)(1)'s cross-referenced conduct. Gonzales, 996 F.2d at 91-92. The court stated: "the broad language of section 2K2.1(c)(1), particularly its unlimited references to 'another offense,' indicates that it is not restricted to offenses which would be relevant conduct but embraces all illegal conduct performed or intended by defendant concerning a firearm involved in the charged offense." Id. at 92.

We join with the circuits that have held that the cross-referenced conduct

_____

[7] In justifying its broad interpretation of "any firearm" to mean truly any firearm, the Eighth Circuit, in Mann, relied upon the Guidelines' instruction that other offenses referred to in specific offense characteristics (and cross references) are limited to such other offenses as fall within the relevant conduct of the charged offense. 315 F.3d at 1056. Mann dealt with the § 2K2.1(b)(5) enhancement for possessing any firearm in connection with another felony. Section 1B1.3 states that specific offense characteristics, of which § (b)(5) is one, are to be governed by the same relevant conduct provision as are cross references. Additionally, because the language of (b)(5) is essentially the same as (c)(1), the Eighth Circuit would likely regard the language in (c)(1) as not being explicit enough to warrant disregarding the strictures of § 1B1.3.

10

must fall under the definitions of relevant conduct found in § 1B1.3. Section 1B1.3 specifically provides that offenses cross-referenced in Chapter Two mean offenses within the relevant conduct, unless otherwise specified. The language of § 2K2.1(c) – "[i]f the defendant used . . . any firearm . . . in connection with the commission . . . of another offense" – does not specify, one way or the other, whether the other offense should be within the relevant conduct. In other words, the mere reference to "another offense" does not resolve the question of whether the other offense must be within the relevant conduct of the charged offense. Thus, we readily conclude that § 2K2.1(c) does not "otherwise specify," and therefore the general principle of §1B1.3 applies to require that such other offenses must be within the relevant conduct of the charged offense.

C. Is the aggravated assault on McCants within the relevant conduct of the charged firearm offense?

In the case before us, the Government argues that the assault on McCants falls under the relevant conduct provision found at § 1B1.3(a)(2). This is the provision that applies to "offenses of a character for which § 3D1.2(d) would require grouping of multiple counts." U.S.S.G. § 1B1.3(a)(2). However, §

11

3D1.2(d) specifically excludes assault from being grouped.[8]  Therefore, the

definition of relevant conduct found in § 1B1.3(a)(2) is not available to the

Government.[9]  See Jones, 313 F.3d at 1023 n.3 (rejecting an argument that an

armed robbery/felony murder was relevant conduct under § 1B1.3(a)(2) because

that provision requires that the other offense be one for which § 3D1.2(d) would

require grouping, and because the armed robbery/felony murder was specifically

excluded from the grouping operation of § 3D1.2(d)); accord Settle, 414 F.3d at

632 n.2; see also Ritsema, 31 F.3d at 566 (rejecting use of § 1B1.3(a)(2) because §

2K2.1 and § 2J1.2 (obstruction of justice) were not listed as offenses that were to

be grouped together).

Because this was the theory upon which the Government relied below to

show relevant conduct, and apparently was the only rationale relied upon by the

district court, we vacate Williams's sentence and remand for resentencing.  The

district court shall examine the other provisions of § 1B1.3 to determine if the

assault is relevant conduct to the possession, and craft a reasonable sentence under

---

[8]  Section 3D1.2(d) specifically excludes from its operation "all offenses in Chapter Two, Part A," which encompasses assault offenses.

[9]  The Government also makes an argument that it is not the assault that would be grouped but rather the firearm used in the assault.  This in not correct: § 2K2.1(c)(1) refers to another offense in which a firearm was used.  Therefore, it is the other offense which must be subject to the rules regarding grouping because it is the assault guideline that is used to calculate the offense level.

the advisory Guidelines.

Accordingly, Williams's sentence is VACATED and REMANDED for resentencing.

CARNES, Circuit Judge, concurring:

Concurring in the judgment and joining the opinion of the Court, I write separately to comment on where we are after the decision in Booker v. United States, 543 U.S. ___, 125 S. Ct. 738 (2005), and to offer a suggestion to the district courts which may help avoid unnecessary resentence proceedings.

The Booker decision did not free us from the task of applying the Sentencing Guidelines, some provisions of which are mind-numbingly complex and others of which are just mind-numbing. Because the post-Booker regime requires "accurate advice" from the guidelines, we have held that the guidelines must be applied correctly. United States v. Ellis, 419 F.3d 1189, 1192 (11th Cir. 2005); United States v. Jordi, 418 F.3d 1212, 1215 (11th Cir. 2005); United States v. Crawford, 407 F.3d 1174, 1178 (11th Cir. 2005). The sword dance must still be done. Its steps can be intricate and the music unrelenting, as this case shows.

The defendant, a convicted felon, was caught red-handed in possession of two firearms. Few crimes are easier to prove, and the defendant pleaded guilty to violating 18 U.S.C. § 922(g)(1). The most important facts for sentencing purposes are that the defendant had two prior felony convictions and an adult lifetime full of convictions for lesser offenses; he was on supervised release at the time of this crime; he possessed not one but two weapons when arrested; and he had shot a man

14

four days before he was caught possessing these firearms. The district court sentenced the defendant to 96 months imprisonment, a reasonable sentence that, if anything, is on the light side in view of the facts. In a simpler—and some would say more rational—system of sentencing and review, that would have been the end of it. But here we are vacating an unquestionably reasonable sentence and sending the case back to the district court for another sentence proceeding in which, after the defendant is hauled from prison into court again, and more scarce resources are spent, the district court will be free to pronounce the same 96-month sentence it imposed the first time around. And, of course, the defendant will have nothing to lose from appealing that sentence again.

We do all of this because the sentencing system in place forces us to review for any perceived mistake each step the district court took in dancing its way through the intricate guidelines, advisory though they be. If convinced that the district court made it through the guidelines without a misstep, which is to say that it interpreted those provisions exactly the way we do, we also assess the reasonableness of the actual sentence imposed. The <u>Booker</u> decision has added that issue to those that we review. The reality is, however, that our reversals stem from interpretation of the guidelines, not from the unreasonableness of the sentences that district courts are imposing. Without much exception, in the post-

15

Booker world we send cases back for resentencing because of some difference of opinion about the advice that the guidelines provided the district court, not because we think the sentence imposed is unreasonable.

This case is a good example of how we are spending our sentence review time. In the course of reviewing the sentence in this simple-crime case, we have decided three guidelines issues, at least two of which are difficult enough to have produced circuit splits. The first issue has to do with the meaning of one word in one clause of one subdivision of one subsection of one guideline. See U.S.S.G. § 2K2.1(c)(1)("[i]f the defendant used or possessed any firearm or ammunition in connection with another felony offense . . .") (emphasis added). As the Court explains, two other circuits appear to be on one side of this interpretive issue, one circuit is on the other side of it, and the opinion of yet another circuit is confusing enough that we cannot tell where it stands on the issue. The second issue is a different one involving the same cross-reference provision, § 2K2.1(c), and its relation to another provision, § 1B1.3, and that issue has also produced a circuit split.

The district court's misstep, if any, involves not those two guidelines issues but instead the relevant conduct provision of § 1B1.3(a)(2) and § 3D1.2(d), which § 1B1.3(a)(2) incorporates by reference, and the effect of those provisions on the

16

calculation of the advisory guidelines sentencing range in this case. Because of our reading of the guidelines provisions, we are setting aside a perfectly reasonable sentence and sending the case back for more proceedings which probably will result in the same sentence being imposed again. We do not even hold that the relevant conduct provision is inapplicable but instead direct the district court to examine other theories under which it might be applied. However that court resolves the relevant conduct issue on remand, whatever it decides the advisory guidelines range is in light of what we have said, it still must consider the same 18 U.S.C. § 3553(a) factors that it did initially in deciding the appropriate sentence in this case.

Therein runs a thread of madness through the method now in place. We review and decide close, hair-splitting interpretive issues arising from guidelines that are only advisory, and we set aside sentences even though the district court, once its "misunderstanding" of the guidelines is corrected, is free to impose the same sentence, and usually will do so. The guidelines are based upon decisions that the Sentencing Commission made after considering the factors set out in § 3553(a), which are the same factors the district court must consider in reaching its decision about the proper sentence in a case after it has calculated the Commission's advice in the form of a guidelines range. If a district court

misinterprets how the Sentencing Commission has resolved the application of the § 3553(a) factors in a given factual setting—if it misapplies the guidelines—then the court has misread the advice it is to consider, but it still has the responsibility to decide for itself how the § 3553(a) factors apply to the case before it. If the federal court system had endless resources or light dockets, the post-Booker system of sentence review would make more sense, but the judicial world we inhabit is one of scarce resources burdened by heavy demands. Of course, neither this Court nor the district courts can change the Booker guidelines sentencing regime and the appellate review system that applies to it.

There is, however, something that the district courts can do to minimize pointless reversals and unnecessary do-overs of sentence proceedings. If a sentencing court is faced with a guidelines question that may become an issue on appeal, the court can indicate whether the advice that results from its resolution of that question makes a difference in the sentence. For example, in this case if the district court had stated that regardless of how the guidelines relevant conduct issue was resolved, it would consider the prior assault under § 3553(a)(1) & (2)(C) and on that basis would still impose the same 96-month sentence, we would not have to send this case back for more sentence proceedings. The sentencing court might have stated that its ruling on the relevant conduct issue resulted in a guidelines

range of 77 to 96 months, but that if it were wrong about that and the range was only 27 to 33 months, the sentence still would have been 96 months based on the § 3553(a) factors. On that basis we could and would have affirmed.

This suggestion is not some radical new idea born of frustration churned up by the Booker decision. The Supreme Court and this Court have long recognized that it is not necessary to decide guidelines issues or remand cases for new sentence proceedings where the guidelines error, if any, did not affect the sentence. See Williams v. United States, 503 U.S. 193, 202, 112 S. Ct. 1112, 1120–21 (1992) ("[O]nce the court of appeals has decided that the district court misapplied the Guidelines, a remand is appropriate unless the reviewing court concludes, on the record as a whole, that the error was harmless, i.e., that the error did not affect the district court's selection of the sentence imposed."); United States v. Blas, 360 F.3d 1268, 1272–73 (11th Cir. 2004) (declining to decide whether the district court misapplied the guidelines where the district court would have reached the same sentence regardless of any error); United States v. Hersh, 297 F.3d 1233, 1250–54 (11th Cir. 2002) (holding that the sentence was "without error and need not be remanded for resentencing" even though the district court erred in applying the grouping guidelines because the district court had stated that it would have reached the same result through an upward departure if necessary); United States v.

19

Kendrick, 22 F.3d 1066, 1068 (11th Cir. 1994) (recognizing that if a guidelines error "did not affect the district court's selection of the sentence imposed" the sentence is due to be affirmed) (internal citations and marks omitted).

Of course, if a sentencing court believes that how it resolves a particular guidelines issue does matter—that the sentence it imposes would have been different if the guidelines range had been—the court can note that for the record as well. That kind of information would help us focus our appellate attention on the issues that matter. And nothing I have said is meant to imply that a district court is not free to decide a disputed guidelines issue without mentioning, or even considering, whether the result of that decision actually affects the sentence it imposes following consideration of the § 3553(a) factors. It is the prerogative of sentencing courts to speak or remain silent about such matters. The choice is theirs.