PER CURIAM:
In this Guidelines interpretation case, we examine the meaning of the word “any” as it is used in United States Sentencing Guideline § 2K2.1(c)(l), and conclude that it covers any firearm that is used in connection with the commission of another offense that is within the relevant conduct of the charged offense.
I. FACTUAL AND PROCEDURAL BACKGROUND
On January 29, 2004, Carlos Williams was arrested for shooting Eric McCants four days earlier. At the time of the arrest, the officers found two guns in Williams’s car. Williams was charged in state court for the assault, and the federal grand jury indicted him for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). Williams pled guilty to possessing one of the firearms without a plea agreement. The Government did not prove that the firearm in the federal charge was the same one used in the McCants assault.
In his written objections to the Presen-tence Report and at sentencing, Williams objected to the calculation of his base offense level. After hearing testimony and determining by a preponderance of the evidence that the assault on McCants was relevant conduct to the federal possession charge, the district court calculated the base level by cross-referencing from the firearms guideline, § 2K2.1, to the guideline for aggravated assault, § 2A2.2.[1] The district court added ten points to the base offense level of fourteen because a firearm was discharged and the victim sustained serious bodily injury. The court subtracted three points for acceptance of responsibility. With a base offense level of twenty-one, and a criminal history level of VI, the *769 suggested Guidelines range was seventy-seven to ninety-six months; the district court sentenced Williams to ninety-six months’ imprisonment.
II. STANDARD OF REVIEW
Williams was sentenced after the Supreme Court handed down its decision in United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). We review questions of law arising under the Guidelines de novo. United States v. Crawford, 407 F.3d 1174, 1178 (11th Cir. 2005). Once the district court has calculated the Guidelines correctly, we review the sentence for reasonableness. Id. at 1179.
III. DISCUSSION

A. The meaning of “any” in U.S.S.G. § 2R2.1(c)(1).

Williams contends that the word “any” in § 2K2.1(c)(l) is confined to any of the firearms that he was charged with possessing. Thus, he argues that the district court erroneously cross-referenced to the aggravated assault guideline, which did not involve the firearm in the federal charge. The Government counters that “any” must mean any firearm the defendant possessed, be it the ones charged or not. The section in question reads:
(c) Cross Reference
(1) If the defendant used or possessed any firearm or ammunition in connection with the commission or attempted commission of another offense, or possessed or transferred a firearm or ammunition with knowledge or intent that it would be used or possessed in connection with another offense, apply—
(A) § 2X1.1 (Attempt, Solicitation, or Conspiracy) in respect to that other offense, if the resulting offense level is greater than that determined above ....
U.S.S.G. § 2K2.1(c)(1). (emphasis added)
Although this court has not reached this issue precisely, it has discussed the meaning of the same key words used in another provision of the Guidelines, i.e. § 2K2.1(b)(5).[2] In United States v. Sutton, 302 F.3d 1226 (11th Cir.2002), this court examined the meaning of “the firearm or ammunition” in the U.S.S.G. § 4B1.4(b)(3)(A) sentencing enhancement for § 922(g) violations. It determined that “the” meant that the firearm had to be the one which was charged in the violation of § 922(g). In reaching this conclusion, the court first noted that the plain language of the guideline must be followed. Id. at 1227. Then it continued:
While the word “any” is general and nonspecific, the word “the” is particular and specific. The Sentencing Guidelines themselves evince an understanding of this distinction. When any firearm or ammunition will do, the Guidelines use the nonspecific phrases “any firearm or ammunition,” see, e.g., USSG § 2K2.1(b)(5), or “a firearm or ammunition,” see, e.g., § 2Kl.l(c)(l), rather than the specific phrase “the firearm or ammunition.” The use of “the firearm or ammunition” in § 4B1.4(b)(3)(A), then, indicates that this Guideline applies only to a particular firearm.
Id. at 1227-28.
Two other circuits have found this reasoning persuasive when interpreting parts *770 of § 2K2.1. In the first of them, the Eighth Circuit cited Sutton approvingly when it held that § 2K2.1(b)(5) did not require the “any firearm” to be the one charged in the indictment. United States v. Mann, 315 F.3d 1054, 1056 (8th Cir. 2003). The court characterized § 2K2.1(b)(5)’s “reference to ‘any firearm’ ” as unambiguous. Id. The court also noted that the defendant’s construction of the “any” to mean the charged firearm would lead to an absurd result, i.e. it would reward those criminals who had the foresight to get rid of the weapon. Id. at 1057. Although Mann did not involve the precise provision at issue here, it did involve a provision of the same guideline that used the same key words, “any firearm.” Thus, Mann is persuasive authority.
In United States v. Jardine, 364 F.3d 1200 (10th Cir.2004), the Tenth Circuit addressed § 2K2.1(c)(l), the very provision at issue here, and determined that it referred to any firearm possessed by the defendant.[3] The court started with the plain language, noting that the Guidelines did not provide a definition of the term. Id. at 1207. It cited Mann and Sutton for their discussion of the Guidelines’ use of “the” and “any.” Id. at 1208. It held that the term “any firearm” was unambiguous. Id. Finally, the court pointed to two further considerations: the fact that the Guidelines require the court to consider all relevant conduct when sentencing and the fact that the defendant’s interpretation would lead to an absurd result for the same reason cited in Mann. Id.
By contrast, in United States v. Gonzales, 996 F.2d 88 (5th Cir.1993), the Fifth Circuit in dicta rejected the plain meaning of “any firearm,” reasoning that it did not fit with the “overall context of section 2K2.1.” 996 F.2d at 92 n. 6. The court reasoned that the “any firearm” must be at least related to the one charged in the indictment. Id. Like Judge Arnold in his dissent in Mann, the court pointed to the language in § 2K2.1(b)(4), which enhanced the sentence if “any firearm” was stolen, and reasoned that this can only logically be the charged firearms or it would not make sense. Id.[4]
We join the Eighth and Tenth Circuits to hold that “any firearm” truly means any firearm.[5] As we earlier held in Sutton, the Sentencing Commission uses *771 “the” and “any” purposely and makes distinctions depending on which word it uses. 302 F.3d at 1227. There is nothing in the language or context of subsection (c)(1) that modifies the words “any firearm,” nor is there anything in the application notes that suggests a different interpretation. Therefore, “any,” as used in subsection (c)(1), can apply to firearms not named in the indictment.

B. Does the conduct used in the § 2K2.1(c) cross reference have to fall within the relevant conduct definition?

The relevant conduct provision of the Guidelines expressly provides that “[u]n-less otherwise specified ... cross references in Chapter Two ... shall be determined on the basis of the following ... [describing four categories of relevant conduct].” U.S.S.G. § lB1.3(a).[6] Thus, the short answer to the question is yes, the other offense cross-referenced in Section 2K2.1(c) must be within the relevant conduct of the charged offense “unless otherwise specified.”
Like the question about the meaning of “any firearm,” a split has developed among the circuits regarding the question of whether the cross-referenced offense in § 2K2.1(c) must be within the relevant conduct of the charged offense. The Seventh Circuit has consistently held that § lB1.3’s relevant conduct definition must be applied to the conduct contained in the § 2K2.1(c) cross reference. See, e.g., United States v. Jones, 313 F.3d. 1019, 1022 (7th Cir.2002). To support this reading, the Seventh Circuit cited the language of § 1B1.3, which states that cross references under Chapter Two have to fit under the relevant conduct test: “ ‘Unless otherwise specified, ... (iii) cross references in Chapter Two ... shall be determined on the basis of the following [definitions of relevant conduct].’ ” United States v. Ritsema, 31 F.3d 559, 564 (7th Cir.1994) (quoting U.S.S.G. § lB1.3(a)). This language makes § 1B1.3 “a general application principle that governs both cross references in Chapter Two offenses and offense level adjustments in Chapter Three, provided those sections do not specify to the contrary.” Id. The commentary to § IB 1.3, the court noted, provides that only where there are “more explicit instructions” should the relevant conduct not be used. Id. at 565. The court in Ritsema held that the language in § 2K2.1(c), “in connection with,” failed to provide the necessary “more explicit instruction[ ].” Id. Therefore, it held that *772 the relevant conduct requirements found in § 1B1.3 governed the use of the § 2K2.1 cross reference. Id.
Several other circuits have joined this interpretation.[7] The Tenth Circuit in Jar-dine married its broad interpretation of “any firearm” to the Guidelines’ requirement that the cross-referenced conduct be within the relevant conduct. 364 F.3d at 1209. The Sixth Circuit also requires that the other offense cross-referenced by § 2K2.1(c)(l) be within the relevant conduct of the charged firearm offense. United States v. Settle, 414 F.3d 629, 633-34 (6th.Cir.2005).
By contrast, the Fifth Circuit has held that § lB1.3’s strictures on relevant conduct do not apply to § 2K2.1(c)(l)’s cross-referenced conduct. Gonzales, 996 F.2d at 91-92. The court stated: “the broad language of section 2K2.1(c)(l), particularly its unlimited references to ‘another offense,’ indicates that it is not restricted to offenses which would be relevant conduct but embraces all illegal conduct performed or intended by defendant concerning a firearm involved in the charged offense.” Id. at 92.
We join with the circuits that have held that the cross-referenced conduct must fall under the definitions of relevant conduct found in § 1B1.3. Section 1B1.3 specifically provides that offenses cross-referenced in Chapter Two mean offenses within the relevant conduct, unless otherwise specified. The language of § 2K2.1(c) — “[i]f the defendant used ... any firearm ... in connection with the commission ... of another offense” — does not specify, one way or the other, whether the other offense should be within the relevant conduct. In other words, the mere reference to “another offense” does not resolve the question of whether the other offense must be within the relevant conduct of the charged offense. Thus, we readily conclude that § 2K2.1(c) does not “otherwise specify,” and therefore the general principle of § 1B1.3 applies to require that such other offenses must be within the relevant conduct of the charged offense.

C. Is the aggravated assault on McCants within the relevant conduct of the charged firearm offense ?

In the case before us, the Government argues that the assault on McCants falls under the relevant conduct provision found at § lB1.3(a)(2). This is the provision that applies to “offenses of a character for which § 3D1.2(d) would require grouping of multiple counts.” U.S.S.G. § lB1.3(a)(2). However, § 3D1.2(d) specifically excludes assault from being grouped.[8] Therefore, the definition of relevant conduct found in § lB1.3(a)(2) is not available to the Government.[9] See Jones, *773 313 F.3d at 1023 n. 3 (rejecting an argument that an armed robbery/felony murder was relevant conduct under § lB1.3(a)(2) because that provision requires that the other offense be one for which § 3D1.2(d) would require grouping, and because the armed robbery/felony murder was specifically excluded from the grouping operation of § 3D1.2(d)); accord Settle, 414 F.3d at 632 n. 2; see also Ritsema, 31 F.3d at 566 (rejecting use of § 1B1.3(a)(2) because § 2K2.1 and § 2J1.2 (obstruction of justice) were not listed as offenses that were to be grouped together).
Because this was the theory upon which the Government relied below to show relevant conduct, and apparently was the only rationale relied upon by the district court, we vacate Williams’s sentence and remand for resentencing. The district court shall examine the other provisions of § 1B1.3 to determine if the assault is relevant conduct to the possession, and craft a reasonable sentence under the advisory Guidelines.
Accordingly, Williams’s sentence is VACATED and REMANDED for resentenc-ing.

. The cross reference provision in § 2K2.1 instructs the court to apply § 2X1.1 if the defendant used or possessed any firearm in connection with the commission of another offense and the resulting base level is higher than it would otherwise be. U.S.S.G. § 2K2.1(c)(1). Section 2X1.1, in turn, instructs the court to use the offense level that is the same as the underlying offense. The underlying offense, in this case, would be aggravated assault, § 2A2.2.

. Section 2K2.1(b)(5) reads: "If the defendant used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense, increase by 4 levels. If the resulting offense level is less than level 18, increase to level 18.”

. The Supreme Court vacated this decision and on remand, the Tenth Circuit reinstated its opinion but remanded for resentencing consistent with Booker. United States v. Jardine, 406 F.3d 1261 (10th Cir.2005).

. The context of § 2K2.1(b)(4), enhancing the offense level of the possession by two if the firearm was stolen, may suggest that it refers to the charged firearm as having been stolen. However, there is no similar context in the instant § 2K2.1(c)(1) to override the plain meaning of the word "any.”

. It is not absolutely clear where the Sixth Circuit fits with respect to these issues. In United States v. Settle, 414 F.3d 629 (6th Cir. 2005), reinstating in part 394 F.3d 422 (6th Cir.2005), the Sixth Circuit seemed to agree with the Eighth Circuit in Mann and the Tenth Circuit in Jardine that "any firearm” meant any firearm used by the defendant in connection with another offense within the relevant conduct of the charged offense, see id. at 633. However, on the next page, the court seemed to also require that the firearm itself, which was used in connection with the other offense, must have some "clear connection” with the firearm possessed in the charged offense. Id. at 634. It is not absolutely clear that the connection between the two firearms would be deemed sufficiently clear if the only connection is that the different firearm is used in connection with another offense which is within the relevant conduct of the charged offense. If the answer to that question is in the affirmative, then the Sixth Circuit is aligned with the Eighth Circuit and the Tenth Circuit, and with our holding in this case.

. Section lB1.3(a) reads:
Chapters Two (Offense Conduct) and Three (Adjustments). Unless otherwise specified, (i)the base offense level where the guideline specifies more than one base offense level, (ii) specific offense characteristics and (iii) cross references in Chapter Two, and (iv) adjustments in Chapter Three, shall be determined on the basis of the following:
(1)(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant;
that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.
(2) solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all acts and omissions described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction;
(3) all harm that resulted from the acts and omissions specified in subsections (a)(1) and (a)(2) above, and all harm that was the object of such acts and omissions; and
(4) any other information specified in the applicable guideline.

.In justifying its broad interpretation of “any firearm'' to mean truly any firearm, the Eighth Circuit, in Mann, relied upon the Guidelines' instruction that other offenses referred to in specific offense characteristics (and cross references) are limited to such other offenses as fall within the relevant conduct of the charged offense. 315 F.3d at 1056. Mann dealt with the § 2K2.1(b)(5) enhancement for possessing any firearm in connection with another felony. Section IB 1.3 states that specific offense characteristics, of which § (b)(5) is one, are to be governed by the same relevant conduct provision as are cross references. Additionally, because the language of (b)(5) is essentially the same as (c)(1), the Eighth Circuit would likely regard the language in (c)(1) as not being explicit enough to warrant disregarding the strictures of § 1B1.3.

. Section 3D 1.2(d) specifically excludes from its operation "all offenses in Chapter Two, Part A,” which encompasses assault offenses.

. The Government also makes an argument that it is not the assault that would be grouped but rather the firearm used in the assault. This is not correct: § 2K2.1(c)(1) refers to another offense in which a firearm *773 was used. Therefore, it is the other offense which must be subject to the rules regarding grouping because it is the assault guideline that is used to calculate the offense level.