# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 10-3090

———————

United States of America,

        Plaintiff - Appellee,

v.

Quentin R. Grays,

        Defendant - Appellant.

\* \* \* \* \* \* \* \* \* \*

Appeal from the United States
District Court for the Western
District of Missouri.

———————

Submitted: April 11, 2011
Filed: May 2, 2011

———————

Before LOKEN, BALDOCK[1], and MURPHY, Circuit Judges.

———————

MURPHY, Circuit Judge.

Quentin Grays pled guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). The district court[2] sentenced him to 108 months in prison followed by three years of supervised release. Grays appeals his sentence, arguing the district court erred in applying a cross reference under the sentencing

———————

[1] The Honorable Bobby R. Baldock, United States Circuit Judge for the Tenth Circuit, sitting by designation.

[2] The Honorable Greg Kays, United States District Judge for the Western District of Missouri.

guidelines and in converting cash to its drug equivalent for purposes of calculating the drug quantity involved in the offense.  We affirm.

Kansas City police arrested Grays, already a felon at the time, in May 2008 for evading officers and committing traffic violations during a car chase.  A search incident to the arrest revealed he had in his possession a Ruger handgun and small quantities of crack, cocaine, and marijuana.  A year later, in May 2009, Grays sold crack to a confidential informant (CI).  The next month the same CI informed police that Grays was armed and driving a 2002 Chevrolet Tahoe.  A tactical squad acting on the tip found the Tahoe unattended in a shopping center parking lot.  When Grays emerged from the shopping center, he saw the waiting police and fled on foot.  He pulled a Glock handgun from his waistband and flung it under a parked car before officers overtook and arrested him.  They searched Grays and discovered he had $5350 in cash on him, including 200 twenty dollar bills.  Officers inventoried Grays' Tahoe after his arrest and found 13.91 grams of crack inside.  They also recovered the handgun Grays had tossed away.

Grays was indicted on two counts of being a felon in possession of a firearm, one count for the Ruger he had in 2008 and the other for the Glock he was carrying in 2009.  Without a written plea agreement Grays pled guilty to the count charging possession of the Ruger, and the government dismissed the remaining charge.  At sentencing Detective Don Stanze testified about the 2009 arrest.  He said that the amount of crack found in the Tahoe made it likely that it was intended for distribution rather than personal use.  He also said that twenty dollar bills are commonly used in the drug trade.  Grays' sister, Keaira Grays, testified on his behalf.  She said that she had given Grays $5000 in cash on June 6, 2009, as a down payment toward her purchase of his Tahoe.  She did not claim to have any personal knowledge of whether Grays had that cash with him on the day of his arrest.

The district court did not credit Keaira Grays' testimony because of internal inconsistencies in her story. The court instead credited officer Stanze's testimony and found that the $5350 in cash was connected to Grays' drug business. In calculating Grays' sentence, the district court applied the cross reference at United States Sentencing Guidelines § 2K2.1(c)(1), which is triggered when a defendant possesses a firearm in connection with an underlying offense. The presentence report (PSR) had identified the underlying offense as drug trafficking.

The court adopted the PSR and applied § 2D1.1 of the sentencing guidelines, which requires a calculation of the quantity of drugs involved in order to determine the offense level. The court took into account the amount of crack, cocaine, and marijuana involved in the 2008 arrest, the sale to the CI, and the 2009 arrest. It also accounted for the cash found on Grays by calculating how much crack $5350 would represent, using a rate of $65 per 1.58 grams (the amount the CI paid Grays for the 1.58 grams of crack he purchased in 2009). Pursuant to application note 10 of § 2D1.1, the court converted the crack and cocaine into their marijuana equivalents and totaled the marijuana involved. Grays' guideline sentencing range was calculated to be 87 to 108 months. The court sentenced him to 108 months.

Grays appeals his sentence, arguing that the § 2K2.1(c)(1) cross reference was incorrectly applied because he possessed a firearm in connection with drug possession, not drug trafficking. He also argues that the cash should not have been converted into its drug equivalent. We review the district court's application of the sentencing guidelines de novo and its factual findings for clear error. United States v. Swanson, 610 F.3d 1005, 1007 (8th Cir. 2010).

After review of the record, we conclude that the district court did not clearly err in finding that Grays possessed a firearm in connection with drug trafficking. He had a distribution quantity of drugs with him when police found him in possession of the Glock. Though he pled guilty only to the Ruger count, there is no requirement

that the firearm for which an enhancement is imposed be the same as the one involved in the count to which the defendant pled guilty. See United States v. Mann, 315 F.3d 1054, 1056 (8th Cir. 2003). The enhancement applies even when the offense of conviction and the possession of the firearm are not contemporaneous. United States v. Davis, 360 F.3d 901, 903 (8th Cir. 2004). There is sufficient evidence to support the court's finding that Grays possessed the Glock in connection with a drug trafficking offense, which properly triggered the cross reference to § 2D1.1.

We also conclude that the district court did not clearly err in converting the cash into its crack equivalent. "[I]n order to accurately reflect the scale of drug trafficking activity, the Guidelines authorize the district court to convert seized money into a quantity of drugs." United States v. King, 518 F.3d 571, 575 (8th Cir. 2008) (internal quotation marks omitted). Here, the court considered it likely that the money was connected to drug trafficking based on Grays' sparse employment history, his recent crack sale to the CI, and the incredibility of Keaira Grays' testimony. That evidence amply supports the conclusion that the conversion helped to reflect the scale of Grays' underlying drug trafficking offense more accurately, which is all the guidelines require.

The judgment of the district court is affirmed.

_____