**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 20 2004**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.

ANDY JARDINE,

        Defendant - Appellant.

No. 02-8110

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**
**(D.C. NO. 02-CR-38-J)**

---

Corinne A. Miller, Casper, Wyoming, for Defendant - Appellant.

Steven K. Sharpe, Assistant United States Attorney, Casper, Wyoming (Matthew H. Mead, United States Attorney, and David A. Kubichek, Assistant United States Attorney, Casper, Wyoming, on the brief), for Plaintiff - Appellee.

---

Before **LUCERO** , **PORFILIO** , and **TYMKOVICH** , Circuit Judges.

---

**TYMKOVICH** , Circuit Judge.

      Defendant Andy Jardine appeals the denial of his motion to suppress and the sentence imposed by the district court following his subsequent conviction on

two counts of being a felon and a person previously convicted of a crime of domestic violence in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and (g)(9). Jardine contends that the district court should have suppressed firearm evidence discovered during a search of his residence because the warrant authorizing the search was based on impermissibly stale information. He further contends that the district court illegally enhanced his sentence under United States Sentencing Commission, *Guidelines Manual*, § 2K2.1(c) (Nov. 2001) (USSG). In applying that section's cross-reference to § 2X1.1, the district court found that Jardine had used or possessed a firearm in connection with the commission of another offense – conspiracy to possess or distribute methamphetamine.

Jardine was thus sentenced in accordance with the controlled substances guideline, USSG § 2D1.1, and the court added a two level increase because Jardine possessed a firearm in connection with the drug offense. *See* § 2D1.1(b)(1). The firearms used for the two level enhancement were not the same firearms used to convict Jardine under § 922(g). Jardine argues his sentence should be reversed because (1) no nexus existed between the firearms that sustained his felon-in-possession convictions and the firearms that triggered the cross-reference's application; (2) application of § 2K2.1(c)'s cross-reference violates his right to due process; and (3) his prior offenses were too remote in

time to constitute relevant conduct under the Guidelines.  Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

## I. Background

On January 9, 2002, drug enforcement officials obtained a search warrant for Andy Jardine's Lovell, Wyoming, residence.  The supporting affidavit contained statements by cooperating witnesses which demonstrated that Jardine had been actively dealing methamphetamine between April 2000 and May 2001, including a statement by a methamphetamine dealer named Juan Ortiz that Jardine had paid him five "zip clips" of ammunition in exchange for drugs.  In addition, the affidavit recounted a January 8, 2002 interview with Michael King in which King stated that Jardine had attempted to sell him methamphetamine the previous day.

The warrant, which was executed on the day of issuance, permitted officers to search the residence and any vehicles located on the property for evidence of controlled substances, materials used in the manufacture or distribution of methamphetamine, and firearms.  (VIII, 65 at 1).  During the course of the search officers recovered a Ruger .22 caliber rifle and assorted ammunition from a motor home parked near the house.  *Id.*  While the search was in progress, Jardine arrived at the house and DEA Special Agent Steve Woodson questioned him about the rifle.  (VIII, 65 at 2).  After being advised of his *Miranda* rights, Jardine told Woodson that he had been living at the residence with his girlfriend, Denise Gossens, for

3

three months and that an acquaintance named Beverly King had purchased the gun for him. *Id.* Jardine also admitted to giving Juan Ortiz ammunition in exchange for methamphetamine on a previous occasion. *Id.* Because the search of the premises did not reveal any evidence of drugs or drug trafficking, Jardine was not arrested at that time.

Subsequently, on February 1, 2002, police arrested Jardine pursuant to a warrant issued for his unlawful possession of the Ruger. *Id.* During a search of the car he was driving at the time of his arrest, officers found a Savage .243 rifle in a gun case located in plain view inside the car. *Id.* The car was registered to Ms. Gossens.

Jardine was charged with two counts of being a felon and a person previously convicted of domestic violence in possession of a firearm. Count one was based on Jardine's possession of the Ruger, while count two pertained to the Savage rifle found in the vehicle. Taking the position that the initial search warrant for his residence was based on stale information, Jardine filed a motion to suppress the firearm evidence seized from the motor home, which the district court denied. After a trial, the jury returned guilty verdicts on both counts of the indictment.

At sentencing, the district court accepted the presentence report's recommendation to enhance Jardine's sentence by applying § 2K2.1(c)(1)(A)'s cross-reference to § 2X1.1, and in so doing concluded that Jardine had used and

4

possessed firearms in connection with the commission of another offense – specifically, conspiracy to possess or distribute fifty to two hundred grams of methamphetamine. It based this determination on the prosecutor's statement and the testimony of DEA Special Agent Woodson, which established by way of off-the-record proffers and Mirandized statements of seven individuals that Jardine (1) was involved in the sale and purchase of methamphetamine between the years 1999 and 2002; (2) traded ammunition as partial payment for drugs on one occasion; (3) threatened a man named Michael King with a .44 magnum; and (4) carried a 9mm Glock and a smaller firearm with him while buying drugs in Idaho.

The district court applied the controlled substance guideline found at USSG § 2D1.1 as to the drug quantity and arrived at a base offense level of 26. The court then applied the specific offense characteristic contained in § 2D1.1(b)(1) and increased Jardine's offense level by two because he possessed a firearm during the drug offense. Application of the Guidelines resulted in an offense level of 28. Based on a criminal history category of II, the district court determined Jardine's sentencing range to be 87 to 108 months, and sentenced him to the maximum of 108 months imprisonment.

## II. The Search Warrant

Jardine first contends that the firearm evidence obtained from the motor home should have been suppressed because the information contained in the search

warrant's supporting affidavit was impermissibly stale. When reviewing a district court's denial of a motion to suppress, this court accepts the district court's factual findings unless they are clearly erroneous, viewing the evidence in the light most favorable to the government. *United States v. Basham*, 268 F.3d 1199, 1203 (10th Cir. 2001). However, the ultimate determination of reasonableness under the Fourth Amendment is a question of law we review de novo. *United States v. Green*, 178 F.3d 1099, 1104 (10th Cir. 1999).

In determining whether a search warrant is supported by probable cause, this court "reviews the sufficiency of the affidavit upon which a warrant is issued by looking at the totality of the circumstances and simply ensuring 'that the magistrate had a substantial basis for concluding that probable cause existed.'" *United States v. Tisdale*, 248 F.3d 964, 970 (10th Cir. 2001) (quoting *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983)). Probable cause exists "only when the supporting affidavit sets forth facts that would lead a prudent person to believe there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Basham*, 268 F.3d at 1203. "Probable cause to search cannot be based on stale information that no longer suggests that the items sought will be found in the place to be searched." *United States v. Snow*, 919 F.2d 1458, 1459 (10th Cir. 1990). "The determination of timeliness, however, does not depend on simply the number of days that have elapsed between the facts relied on and the issuance of

the warrant; instead, whether the information is too stale to establish probable cause depends on the nature of the criminal activity, the length of the activity, and the nature of the property to be seized." *Id.* at 1460 (internal quotations omitted). Where the offense in question is ongoing and continuing, the passage of time is not of critical importance. *United States v. Mathis,* 357 F.3d 1200, 1207 (10th Cir. 2004); *United States v. Le*, 173 F.3d 1258, 1267 (10th Cir. 1999).

Other circuits have held that more recent events in an affidavit can refresh otherwise dated information. For example, in *United States v. Spikes*, 158 F.3d 913, 924 (6th Cir. 1998), the Sixth Circuit held that an affidavit describing a four-year long drug trafficking operation supported a finding of probable cause because, "even assuming the information in the affidavit was in some respects 'stale,' the more recent events related therein refreshed this otherwise stale information." This principle was applied again in *United States v. Greene*, 250 F.3d 471, 481 (6th Cir. 2001), where the Sixth Circuit held that twenty-three month old information in an affidavit was refreshed by subsequent corroboration from an informant. *See also United States v. Ozar*, 50 F.3d 1440, 1446-47 (8th Cir. 1995) (probable cause may be found where recent information corroborates otherwise stale information); *United States v. Bucuvalas*, 970 F.2d 937, 940 (1st Cir. 1992) ("Staleness does not undermine the probable cause determination if the affidavit contains information that updates, substantiates, or corroborates the stale material."), *abrogated on other*

7

*grounds by Cleveland v. United States*, 531 U.S. 12 (2000). We find this to be a sensible approach to the problem presented by an affidavit which describes both dated and recent facts. *See* 2 WAYNE R. LaFAVE, SEARCH & SEIZURE § 3.7 at 347 (3d ed. 1996 & Supp. 2004) ("more recent events may take on greater significance when considered together with other facts which are not as current but which were much more incriminating at the time they occurred").

Here, police sought the warrant on January 9, 2002. Some of the events described in the supporting affidavit concerned Jardine's activities prior to May of 2001, eight months before the warrant was obtained. Taken alone, it is doubtful that this earlier information would establish probable cause to search Jardine's current residence. But that was not all the information available to the district judge issuing the warrant. First, the affidavit recounted a July 2001 police interview of Jardine during which Jardine admitted purchasing methamphetamine from police informants. Second, the affidavit stated that, only a few days before seeking the warrant, police interviewed two witnesses who claimed they had purchased drugs from Jardine in the past. Finally, the day before the warrant was obtained, January 8, 2002, Michael King told police that Jardine had attempted to sell him methamphetamine the previous day. The district judge thus had a picture of Jardine's drug activity over a nearly twelve month period, including up to a few days before police sought the warrant. We accordingly agree with the district court

8

that King's contemporaneous statements and the other evidence "refreshed" the affidavit's earlier facts and, taken together, established probable cause for the search.

In support of our conclusion, we also note that the events described in the affidavit show Jardine's drug offenses were ongoing. The affidavit contained detailed information about Jardine's drug activity between 1999 and May of 2001, including statements from individuals who had purchased methamphetamine from Jardine or sold drugs to him at regular intervals. In combination with King's corroborating statement, the affidavit demonstrated that Jardine's methamphetamine trafficking was an ongoing and continuing enterprise. *See Mathis,* 357 F.3d at 1207 (information in affidavit not stale where defendant was suspected of "continuous and ongoing drug activity"); *United States v. Iiland*, 254 F.3d 1264, 1269 (10th Cir. 2001) (information not stale where activities set out in affidavit occurred three months before warrant was obtained because facts demonstrated ongoing drug trafficking over considerable period of time); *United States v. Myers*, 106 F.3d 936, 939 (10th Cir. 1997) (where defendant's drug activities were "ongoing and continuous," five month gap between when police received tips and search warrant was obtained did not render information stale); *see also Spikes*, 158 F.3d at 924 ("even if a significant period has elapsed since a defendant's last reported criminal activity, it is still possible that, depending upon

9

the nature of the crime, a magistrate may properly infer that evidence of wrongdoing is still to be found on the premises").

Because we conclude that the district judge reasonably could believe that evidence of wrongdoing would be discovered at Jardine's residence, we hold that probable cause existed to support the search. Given this conclusion, we need not address Jardine's argument first raised on appeal that the firearm seized during his subsequent arrest – the warrant for which was based on evidence discovered in the search of his residence – should be suppressed under the "fruit of the poisonous tree" doctrine.

### III. Sentencing Guidelines

Jardine objects on three grounds to the district court's application of the Sentencing Guidelines. He argues (1) the district court erred in enhancing his sentence under USSG § 2K2.1 because no nexus existed between the firearms that triggered that section's cross-reference and the firearms that sustained his felon-in-possession convictions; (2) application of § 2K2.1(c)'s cross-reference violates his right to due process; and (3) his prior offenses were too remote to constitute relevant conduct under the Guidelines. We review the district court's interpretation of the Sentencing Guidelines de novo, and its factual findings for clear error, giving due deference to the district court's application of the Guidelines to the facts. *United States v. Brown*, 314 F.3d 1216, 1222 (10th Cir. 2003), *cert. denied*,

10

537 U.S. 1223 (2003).

A.

Section 2K2.1(c) provides as follows:

> (1) If the defendant used or possessed *any firearm or ammunition* in connection with the commission or attempted commission of another offense, or possessed or transferred a firearm or ammunition with knowledge or intent that it would be used or possessed in connection with another offense, apply --
>
> > (A) §2X1.1 (Attempt, Solicitation, or Conspiracy) in respect to that other offense, if the resulting offense level is greater than that determined above;
> > . . .

(emphasis added). In turn, § 2X1.1(a) directs the sentencing court to establish defendant's base offense level "from the guideline for the substantive offense . . . ."[1] In this case, the district court calculated Jardine's base offense level under the controlled substances guideline, as it found Jardine had conspired to possess or distribute a specified amount of methamphetamine.[2]

---

[1] Section 2X1.1(a) reads in full: "Base Offense Level: The base offense level from the guideline for the substantive offense, plus any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty."

[2] The commentary to § 2X1.1 states that the phrase "substantive offense" as used in the guideline means "the offense that the defendant was *convicted* of soliciting, attempting, or conspiring to commit." USSG § 2X1.1, comment. (n.2) (emphasis added). However, as discussed below, in *United States v. O'Flanagan*, 339 F.3d 1229, 1235 (10th Cir. 2003), we held § 2X1.1 "does not require a conviction before a district court may use the guideline provision applicable to

(continued...)

11

At sentencing, the court also found there was no proof that the firearms that sustained Jardine's § 922(g) convictions were used in connection with his drug trafficking activities. However, it determined that no such connection was necessary under the language of § 2K2.1(c):

> I don't find any nexus between the two weapons in this case and the weapons that are relied upon or – and the drug offenses that are described in the sentencing guideline; that is, none of the weapons were apparently around drugs, were convenient to drugs or pointed at somebody or brandished in a drug offense. Weeks, months, half a year or more went by between those instances.
>
> On the other hand, for the application of that cross-reference, I don't think it is necessary that there be a nexus because the cross-reference reads if the defendant used or possessed any firearm or ammunition in connection with the commission or attempted commission of another offense or possessed or transferred a firearm or ammunition or transferred ammunition with knowledge or intent that it be used in connection with another offense, then you apply [§] 2X1.1.

[Vol XIII, 65-66].

We interpret the Sentencing Guidelines as statutes, adhering to their "clear, unambiguous language" unless there is "manifestation of contrary intent." *United States v. Kravchuk*, 335 F.3d 1147, 1158 (10th Cir. 2003), *cert. denied*, 124 S. Ct.

---

[2](...continued)
the conduct underlying the firearm offense." The underlying conduct in *O'Flanagan* was a robbery. Therefore, "substantive offense" in this case refers to Jardine's armed drug trafficking.

12

279 (2003). Unless the Sentencing Guidelines provide a special definition of the particular term whose meaning is at issue, we give the language of the Guidelines its ordinary meaning. *United States v. Plotts*, 347 F.3d 873, 876 (10th Cir. 2003).

The Guidelines do not provide a definition of the phrase "any firearm or ammunition" as used in § 2K2.1(c)(1) and this circuit has not had occasion to interpret the language. Jardine contends that in order for § 2K2.1(c) to be applied the firearms that triggered application of the cross-reference must be the same firearm or firearms that sustained his § 922(g) felon-in-possession convictions. We disagree.

In *United States v. Mann*, 315 F.3d 1054 (8th Cir. 2003), *cert. denied*, 124 S. Ct. 125 (2003), the Eighth Circuit rejected a nearly identical argument when it concluded that the use of "any firearm or ammunition" in USSG § 2K2.1(b)(5),[3] a provision similar to § 2K2.1(c)(1), indicates that the guideline "applies to *any* firearm and not merely to a particular firearm upon which the defendant's felon-in-possession conviction is based." 315 F.3d at 1056. In so holding, the

---

[3]

> If the defendant used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense, increase by 4 levels. If the resulting offense level is less than level 18, increase to level 18.

USSG § 2K2.1(b)(5).

*Mann* Court noted that § 2K2.1(b)(5) is a far-reaching enhancement and its reference to "any firearm" is unambiguous in the context in which it is used. *Id*. It also observed, as has the Eleventh Circuit, that the Sentencing Guidelines themselves recognize the distinction between "any" and "the" in the context of firearm enhancement provisions: "When any firearm or ammunition will do, the Guidelines use the nonspecific phrases 'any firearm or ammunition,' *see, e.g.* USSG § 2K2.1(b)(5), or 'a firearm or ammunition,' *see, e.g.* § 2K[2].1(c)(1), rather than the specific phrase 'the firearm or ammunition.'" *Id.* (quoting *United States v. Sutton*, 302 F.3d 1226, 1227-28 (11th Cir. 2002)).

We believe the reasoning of *Mann* applies with equal force here and hold that § 2K2.1(c)(1) also applies to *any* firearm or ammunition. As with § 2K2.1(b)(5), § 2K2.1(c)(1) has been interpreted to be a far-reaching enhancement. *See United States v. Willis*, 925 F.2d 359, 361-62 (10th Cir. 1991) (section 2K2.1(c)(1)'s cross-reference permits a sentencing court to consider other offense conduct, even though defendant was only convicted of being a felon-in-possession of a firearm and possessing an unregistered firearm). Further, § 2K2.1(c)(1)'s reference to "any firearm or ammunition" is unambiguous and we must give the phrase its ordinary meaning in the absence of a manifestation of contrary intent by Congress. Accordingly, we hold that § 2K2.1(c)(1) applies to *any* firearm or ammunition, including that firearm or ammunition used by a defendant in connection with

14

another offense, even if different from the particular firearm or ammunition upon which defendant's felon-in-possession conviction is based.

Our holding is supported by two further considerations. First, the Guidelines require courts to consider all relevant conduct when determining the sentencing guideline range. *See* USSG § 1B1.3 (defining relevant conduct); *United States v. Mendez-Zamora*, 296 F.3d 1013, 1020 (10th Cir. 2002) (Guidelines require that all relevant conduct be considered at sentencing), *cert. denied*, 537 U.S. 1063 (2002). As noted above, § 2K2.1(c)(1) provides for enhancement of the offense level if the defendant "used or possessed any firearm or ammunition in connection with the commission or attempted commission of another offense." USSG § 2K2.1(c)(1). Jardine's use of firearms in past drug transactions and his admitted trading of ammunition for methamphetamine is therefore clearly relevant to his sentencing on felon-in-possession charges.

Second, as *Mann* recognized, Jardine's proposed reading of the guideline would lead to an absurd result. *See Mann*, 315 F.3d at 1056. His proposed construction would benefit those criminals who are not apprehended with the exact firearm they used or possessed in connection with the commission of another offense. In such a case, the government would be precluded from seeking § 2K2.1(c)(1)'s enhancement even when it is undisputed that the defendant used or possessed a firearm, unless it could actually prove it was one of the exact weapons

15

for which the defendant was charged under 18 U.S.C. § 922(g).  *See id.*  Such a result is contrary to the clear intent of the Guidelines.

B.

We also reject Jardine's contention that application of the cross-reference violates his right to due process because, although he was not charged with or convicted of drug trafficking, Jardine was nonetheless sentenced under the controlled substances guideline.  In *United States v. O'Flanagan*, 339 F.3d 1229, 1235 (10th Cir. 2003), we concluded that "§ 2X1.1, when cross-referenced by § 2K2.1(c), does not require a conviction before a district court may use the guideline provision applicable to the conduct underlying the firearm offense."  We also held that a defendant cannot assert a due process claim under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), if his sentence does not exceed the statutory maximum for his underlying conviction.  *Id.* at 1232, n.2 (citing *Harris v. United States*, 536 U.S. 545, 558, 565 (2002)).  In this case Jardine's sentence of 108 months imprisonment is within the 120 month statutory maximum established by Congress for violations of § 922(g).  Therefore, *O'Flanagan* is dispositive of his claim.

C.

Finally, Jardine maintains that his prior use and possession of firearms, even if proved, was too remote in time to constitute "relevant conduct" under the Guidelines.  We note that the district court made no specific findings relative to

this issue. We may address the issue here, however, because "we are free to affirm

a district court decision on any grounds for which there is a record sufficient to

permit conclusions of law, even grounds not relied upon by the district court."

*United States v. Roederer*, 11 F.3d 973, 977 (10th Cir. 1993) (internal quotations

omitted).

Under USSG § 1B1.3 the Guideline range for an offense must be determined

on the basis of all relevant conduct, *see United States v. VanMeter*, 278 F.3d 1156,

1166 (10th Cir. 2002), including prior criminal acts that are "part of the same

course of conduct or common scheme or plan as the offense of conviction." USSG

§ 1B1.3(a)(2). This circuit has construed broadly the meaning of relevant conduct.

*See United States v. Asch*, 207 F.3d 1238, 1243 (10th Cir. 2000).

The commentary to the Guidelines explains what constitutes "the same

course of conduct":

> Offenses that do not qualify as part of a common scheme
> or plan may nonetheless qualify as part of *the same course
> of conduct if they are sufficiently connected or related to
> each other as to warrant the conclusion that they are part
> of a single episode, spree, or ongoing series of offenses*.
> Factors that are appropriate to the determination of
> whether offenses are sufficiently connected or related to
> each other to be considered as part of the same course of
> conduct include the degree of similarity of the offenses,
> the regularity (repetitions) of the offenses, and the time
> interval between the offenses. When one of the above
> factors is absent, a stronger presence of at least one of the
> other factors is required. For example, where the conduct
> alleged to be relevant is relatively remote to the offense of

> conviction, a stronger showing of similarity or regularity is necessary to compensate for the absence of temporal proximity. The nature of the offenses may also be a relevant consideration.

USSG § 1B1.3, comment. (n.9(B)) (emphasis added).

In our view, there is ample evidence in the record to support the conclusion that Jardine's past use of firearms during drug trafficking was part of the "same course of conduct" as the offense of conviction. Several individuals made off-the-record proffers and gave Mirandized statements that showed Jardine regularly possessed firearms when purchasing or selling methamphetamine. Although some of these instances occurred up to two years before Jardine's arrest, the similarity and regularity of the offenses demonstrates that they were part of an ongoing series of offenses or a pattern of conduct – namely, Jardine's unlawful possession of firearms. *See Roederer*, 11 F.3d at 979 (10th Cir. 1993) ("same course of conduct" inquiry focuses on whether defendant has engaged in an identifiable "behavior pattern" of specified criminal activity). *But see United States v. Cross*, 121 F.3d 234, 238-40 (6th Cir. 1997) (rejecting use of conduct that, although it occurred in the course of defendant's overall drug dealing, was not connected to the one drug distribution of which he was convicted).

## IV.

For these reasons, we AFFIRM the district court's denial of the motion to suppress and AFFIRM Jardine's conviction and sentence.

F I L E D
**United States Court of Appeals**
**Tenth Circuit**

**MAY 12 2005**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

        Plaintiff-Appellee,

v.

ANDY JARDINE,

        Defendant-Appellant.

No. 02-8110
D. of Wyo.
(D.C. No. 02-CR-38-1J)

**ORDER ON REMAND**

Before **LUCERO** , **PORFILIO** , and **TYMKOVICH** , Circuit Judges.

A jury convicted Andy Jardine of violating 18 U.S.C. § 922(g). The pre-sentence report (PSR) recommended several enhancements to Jardine's sentence, to which he objected on factual and constitutional grounds. The district court overruled his objections and ultimately sentenced Jardine to 108 months imprisonment.

Jardine filed a timely appeal with this court alleging the sentence violated his constitutional rights. We affirmed Jardine's sentence. *See United States v. Jardine* , 364 F.3d 1200 (10th Cir. 2004). Jardine then timely filed a petition for

writ of certiorari with the Supreme Court of the United States asserting his sentence violated his constitutional rights. After the Court decided *United States v. Booker*, 125 S. Ct. 738 (2005), it granted the writ and remanded to this court for further consideration. *See Jardine v. United States*, 125 S. Ct. 1024 (2005). As a result, we requested supplemental briefing in light of *Booker*.

Jardine requests that we remand for re-sentencing and the government concedes the existence of constitutional error in this case and urges us to remand to the district court for re-sentencing in accordance with *Booker*. Accordingly, we REINSTATE our previous opinion except for the portion affirming Jardine's sentence, and REMAND for re-sentencing in accordance with *Booker*. The mandate shall issue forthwith.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge

2