# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
　　　　　　　*Plaintiff-Appellee,*

　　　　　　v.

KEVIN WESLEY NICHOLS,
　　　　　　　*Defendant-Appellant.*

No. 05-30503

D.C. No.
CR-05-00083-
JLQ/CI

OPINION

Appeal from the United States District Court
for the Eastern District of Washington
Justin L. Quackenbush, Senior Judge, Presiding

Argued and Submitted
July 24, 2006—Seattle, Washington

Filed October 6, 2006

Before: J. Clifford Wallace, Kim McLane Wardlaw and
Raymond C. Fisher, Circuit Judges.

Opinion by Judge Fisher;
Concurrence by Judge Wallace

17393

**COUNSEL**

Philip E. Nino, Spokane, Washington, for the defendant-appellant.

Earl A. Hicks, Assistant United States Attorney, Spokane, Washington, for the plaintiff-appellee.

**OPINION**

FISHER, Circuit Judge:

Kevin Nichols appeals his 57-month sentence following his guilty plea conviction for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). We have jurisdiction under 28 U.S.C. § 1291.

Nichols challenges the district court's enhancement of his base offense level under U.S.S.G. § 2K2.1(b)(5), which provides for a four-level increase "[i]f the defendant used or possessed any firearm . . . in connection with another felony offense." He argues that this provision applies only to firearms listed in the count of conviction or underlying indictment. Because his two-count federal indictment did not list

the firearm he used in connection with a prior felony assault, Nichols contends that the district court erred in increasing his offense level under § 2K2.1(b)(5). Nichols also argues that his sentence was unreasonable.

We affirm the district court's application of § 2K2.1(b)(5), because Nichols' use and possession of the gun during the assault constitutes relevant conduct under U.S.S.G. § 1B1.3. We further hold that Nichols' sentence was not unreasonable, and therefore affirm his sentence.

## I.    Factual and Procedural Background

On July 19, 2004, Nichols displayed a Glock brand handgun while threatening to kill another person in Spokane, Washington. The victim informed local police that Nichols could be found at Dennis Sinclair's residence. Sinclair told the investigating officers that Nichols had arrived at his home shortly after threatening the victim and had deposited firearms in Sinclair's girlfriend's safe. After obtaining consent to search the safe, the police seized a .380 caliber Sterling Model 400 handgun and a Lorcin Model L-380 semiautomatic handgun, both of which were reported stolen in late June 2004. The police also found a stolen Glock Model 19 9mm handgun in a laundry basket located in a bedroom in Sinclair's residence.

Two weeks later, based upon a separate investigation conducted by the United States Secret Service, officers from the Bureau of Alcohol, Tobacco and Firearms (ATF) searched the residence of Sinclair's friend, David Waldvogel, and recovered five additional stolen firearms. According to Waldvogel, Nichols had instructed his girlfriend to remove the guns from her residence, where they were being stored, and she in turn had arranged for Sinclair to remove them. Some time thereafter, Waldvogel agreed to take the stolen firearms and store them for Nichols.

As a result of the July 19 incident, Nichols pled guilty to third degree assault and second degree unlawful possession of a firearm — specifically, the Glock — in Spokane County Superior Court on December 22, 2004. According to the state court amended information, the firearm used in the assault was the Glock that police had found in the laundry basket at Sinclair's home.

After his state conviction, Nichols informed an ATF agent that both he and Sinclair were methamphetamine addicts in the summer of 2004, and that he worked with a burglary ring that would steal property, including firearms. Nichols further admitted to taking the Sterling and Lorcin handguns to Sinclair's residence, along with other stolen property. In a subsequent interview, Nichols admitted to hiding a Glock Model 19 handgun in the basement of Sinclair's home after committing the July 19 assault. He claimed to have purchased the gun from an unknown individual on the street, and asserted that police had not recovered this firearm from Sinclair's home because his girlfriend had removed it from the basement and had given it to an individual to whom Nichols reportedly took stolen property and firearms in exchange for methamphetamine. Nichols explained that he ultimately pled guilty in state court to possessing the Glock found in Sinclair's home — even though he had not possessed it during the assault — because his cousin (whom he did not want to get in trouble) had taken that particular handgun to Sinclair's residence. Nichols does not contest, however, that the gun he used in the July 19 assault was a Glock.

On April 19, 2005, a federal grand jury returned a two-count indictment charging Nichols with being a felon in possession of two firearms in violation of 18 U.S.C. § 922(g) (Count One) and possession of stolen firearms in violation of 18 U.S.C. § 922(j) (Count Two). Count One listed the Sterling and Lorcin handguns found in Sinclair's girlfriend's safe, while Count Two listed the five firearms recovered from

Waldvogel's residence. None of the guns listed in the indictment was a Glock.

Nichols pled guilty to Count One under the terms of a written plea agreement, pursuant to which Count Two was dismissed. The plea agreement further specified that the parties agreed to a base offense level of 14 under U.S.S.G. § 2K2.1(a)(6), with a two-level increase under § 2K2.1(b)(4) because the firearms were stolen. The government agreed to move for a three-level downward adjustment if Nichols timely accepted responsibility for the offense and provided complete and accurate information during the sentencing process. The government also agreed to recommend that the district court impose a sentence at the low end of the applicable guidelines range.

However, the parties disagreed as to the applicability of U.S.S.G. § 2K2.1(b)(5), which is a specific offense characteristic that provides for a four-level increase "[i]f the defendant used or possessed any firearm or ammunition in connection with another felony offense." The plea agreement noted the government's belief that this increase should be added because Nichols used a firearm during the July 19 felony assault; Nichols disagreed because the Glock he used was not listed in the indictment. Notwithstanding this disagreement, both parties acknowledged that the actual sentence imposed would be within the sole discretion of the district court and that the court could "impose any sentence it deems appropriate up to the statutory maximum[ ]" of 10 years in prison.

At the initial sentencing hearing, the district court raised the possibility of imposing a four-level enhancement under § 2K2.1(b)(1)(B) for relevant conduct that included involvement of eight or more weapons. This enhancement was absent from the plea agreement. In addition, the district court noted that Nichols had "a common M.O.," namely, that

> in July of 2004, Mr. Nichols was involved in an
> ongoing scheme to burglarize houses and steal fire-

arms, and use those firearms for various purposes such as sale or barter for drugs, or *in the case of that third degree assault, use of the firearm in connection with another felony* . . . . [T]here's no question he possessed a firearm illegally as a convicted felon at the time he assaulted and threatened to kill the person over some relatively minor dispute.

However, having noted that neither the indictment nor the plea agreement referred to the Glock used in the assault, the district court questioned whether that firearm had to be named in the indictment to sustain a four-level enhancement under § 2K2.1(b)(5).[1] The court continued the hearing to allow the parties to review the enhancement issues.

At the second sentencing hearing, Nichols did not dispute that he possessed or used a Glock 9mm handgun to commit his prior third degree assault. However, he again objected to an enhancement under § 2K2.1(b)(5) because the firearm was not listed in the indictment. In addition, the government stated that it was no longer pursuing this enhancement and explicitly recommended a 30-month sentence. Notwithstanding Nichols' and the government's positions, the district court found that a four-level enhancement under § 2K2.1(b)(5) was appropriate:

> [T]he record is clear here, and it is not disputed, that Mr. Nichols used a firearm in connection with [the July 19, 2004 assault], so there is really no dispute that he used a firearm. The issue is whether or not it has to be the same firearm as the offense of convic-

---

[1]Similarly, to enhance under § 2K2.1(b)(1) for involvement of more than eight firearms, the court asked the parties whether the court could include, as "relevant conduct," all of the firearms involved in Nichols' "ongoing course of illegal conduct," rather than only the two guns named in the count of conviction. However, Nichols ultimately stipulated to the facts supporting this enhancement.

tion, and it is my ruling it does not need to be and, therefore, I will increase the offense level by 4 pursuant to [§ 2K2.1(b)(5)].[2]

The district court then added another four levels under § 2K2.1(b)(1)(B) for relevant conduct that included involvement of eight or more weapons.

As a result of these enhancements, and after a three-level reduction for acceptance of responsibility and timely entry of plea, the court determined that Nichols had a total offense level of 21 and a criminal history category of IV, yielding an advisory guidelines range of 57-71 months. In imposing Nichols' sentence, the district court paid special attention to Nichols' violent behavior and repeated use of deadly weapons, stating that "a finding could well be made . . . that a category IV seriously underrepresents, in fact, [Nichols'] true criminal history." The court also addressed other potentially mitigating factors like Nichols' addiction to methamphetamine and his cooperation with the government during the proceedings. Finally, in addressing the government's recommended sentence, the court made special reference to its post-*Booker* sentencing obligations, stating that a 30-month sentence "would be inappropriate in view of the nature of the offense, the advisory Sentencing Guideline Range, the factors set forth in 18 U.S.C. § 3553(a), and the Defendant's history of on-going violence including the possession and use of deadly weapons." Ultimately, the district court sentenced Nichols to a term of 57 months, the low end of the guidelines range. Nichols timely appealed.

## II.   Standard of Review

We review a district court's interpretation of the sentencing

---

[2]The district court noted, however, that the state conviction for third degree assault properly was not included in Nichols' criminal history score.

guidelines de novo. *See United States v. Kimbrew*, 406 F.3d 1149, 1151 (9th Cir. 2005). A district court's application of the Sentencing Guidelines to the facts of a case is reviewed for abuse of discretion, and we review a district court's factual findings for clear error. *Id.* at 1151. "[I]f there was no material error in the district court's calculation of the appropriate Guidelines range," we examine the "reasonableness of the overall sentence in light of all the 18 U.S.C. § 3553(a) factors." *United States v. Cantrell*, 433 F.3d 1269, 1280 (9th Cir. 2006).

## III.  Discussion

### A.  Four-level enhancement under U.S.S.G. § 2K2.1(b)(5)

Nichols does not dispute the district court's factual finding that he used and possessed a Glock 9mm handgun "in connection with" his prior felony assault. Instead, he argues that the district court erred in enhancing his sentence under § 2K2.1(b)(5) because it misinterpreted the term "any firearm," which Nichols asserts refers only to the firearms listed in the federal indictment underlying the conviction upon which the enhancement is based. To support his position, Nichols relies on Judge Morris Arnold's dissenting opinion in *United States v. Mann*, which concluded that "the word 'any' refers to any firearm that is mentioned in the indictment." 315 F.3d 1054, 1057 (8th Cir. 2003) (Arnold, J., dissenting).

On appeal, the government responds that the plain meaning of "any firearm" controls and that a § 2K2.1(b)(5) increase does not require the firearm to be listed in the indictment. The government suggests that "any" means just that and further notes that each of our sister circuits to consider arguments like Nichols' have rejected it. *See United States v. Brummett*, 355 F.3d 343, 345 (5th Cir. 2003) (affirming a § 2K2.1(b)(5) enhancement for possession of two uncharged firearms); *Mann*, 315 F.3d at 1056 (holding that "use of the term 'any firearm[ ]' in § 2K2.1(b)(5) indicates that this guideline

applies to any firearm and not merely to a particular firearm upon which the defendant's felon-in-possession conviction is based"); *United States v. Jardine*, 364 F.3d 1200, 1208 (10th Cir. 2004) (holding that § 2K2.1(c)(1), which includes the language "used or possessed any firearm," applies to "*any* firearm or ammunition, including that firearm or ammunition used by a defendant in connection with another offense, even if different from the particular firearm or ammunition upon which defendant's felon-in-possession conviction is based"), *judgment vacated on other grounds by Jardine v. United States*, 543 U.S. 1102 (2005) . The district court found these cases persuasive and expressly relied on them in applying the enhancement.

Although the government focuses solely on the plain meaning of "any firearm" to support the district court's enhancement, "we may affirm on any ground supported by the record, even if it differs from the rationale of the district court." *Moran v. McDaniel*, 80 F.3d 1261, 1268 (9th Cir. 1996) (internal quotation marks omitted). In this case, we need not determine whether the plain meaning of "any firearm" controls, because Nichols' possession of the Glock constitutes relevant conduct under the Guidelines and the district court therefore properly enhanced Nichols' sentence. *See* U.S.S.G. § 1B1.3(a)(2).[3]

---

[3]We note that our sister circuits faced with a challenge similar to Nichols' did not address the relevant conduct issue and instead permitted application of a § 2K2.1(b)(5) enhancement for prior conduct that may not have been relevant to the instant offense. *Cf. Mann*, 315 F.3d at 1056; *United States v. Davis*, 360 F.3d 901, 903-04 (8th Cir. 2004); *Jardine*, 364 F.3d at 1206-08. However, here Nichols' possession of the Glock *was* relevant to the underlying federal offense and we therefore need not address whether an enhancement would be proper in a case where the prior conduct was unrelated.

Judge Wallace suggests that like the dissent in *Mann*, we read "any firearm" as meaning "a firearm mentioned in the indictment," and thereby contravene the plain meaning of the statute. Not so. We merely read § 2K2.1(b)(5) in conjunction with § 1B1.3, the Guidelines provision that explains how specific offense characteristics like 2K2.1(b)(5) "shall be determined." Moreover, just because Nichols and the government ignore the relevant conduct provision does not prevent us from relying on it to decide this case. *See Moran*, 80 F.3d at 1268.

### 1.   Relevant Conduct

**[1]** Relevant conduct under U.S.S.G. § 1B1.3(a)(2) encompasses specific offense characteristics of a defendant's acts that "were part of the same course of conduct or common scheme or plan as the offense of conviction." Application note 8 to § 1B1.3 provides two examples demonstrating when a prior offense can and cannot be considered part of the same course of conduct or common scheme:

> For the purposes of subsection (a)(2), offense conduct associated with a sentence that was imposed prior to the acts or omissions constituting the instant federal offense (the offense of conviction) is not considered as part of the same course of conduct or common scheme or plan as the offense of conviction.
>
> Examples: (1) The defendant was convicted for the sale of cocaine and sentenced to state prison. Immediately upon release from prison, he again sold cocaine to the same person, using the same accomplices and modus operandi. The instant federal offense (the offense of conviction) charges this latter sale. In this example, the offense conduct relevant to the state prison sentence is considered as prior criminal history, not as part of the same course of conduct or common scheme or plan as the offense of conviction. . . . (2) The defendant engaged in two cocaine sales constituting part of the same course of conduct or common scheme or plan. Subsequently, he is arrested by state authorities for the first sale and by federal authorities for the second sale. He is convicted in state court for the first sale and sentenced to imprisonment; he is then convicted in federal court for the second sale. *In this case, the cocaine sales are not separated by an intervening sentence. Therefore, under subsection (a)(2), the cocaine sale*

*associated with the state conviction is considered as*
*relevant conduct to the instant federal offense.* The
state prison sentence for that sale is not counted as
a prior sentence; see § 4A1.2(a)(1).

U.S.S.G. § 1B1.3(a)(2), cmt. 8 (emphasis added).

[2] As the PSR explicitly noted, Nichols' possession of the
Glock — which he possessed contemporaneously with the
Sterling and the Lorcin — qualified as relevant conduct under
example 2 of application note 8, because "it is related to the
offense conduct for the instant federal offense."[4] Application
note 9 supports our conclusion that Nichols' possession of the
Glock was "part of the same course of conduct or common
scheme or plan" as his federal offense of conviction. U.S.S.G.
§ 1B1.3(a)(2). That note explains that "[f]or two or more
offenses to constitute part of a common scheme or plan, they
must be substantially connected to each other by at least one
common factor, such as common victims, common accom-
plices, common purpose, or similar modus operandi."
§ 1B1.3, cmt. 9(A). "Offenses that do not qualify as part of a
common scheme or plan may nonetheless qualify as part of
the same course of conduct if they are sufficiently connected
or related to each other as to warrant the conclusion that they
are part of a single episode, spree, or ongoing series of
offenses." *Id.* at cmt. 9(B). The determining factors are "the
degree of similarity of the offenses, the regularity (repetitions)
of the offenses, and the time interval between the offenses."
*Id.*

[3] In this case, and as the district court correctly found,
Nichols' possession of all of the stolen firearms stems from

---

[4]As noted previously, Nichols now claims that the Glock found in Sin-
clair's laundry basket during the July 19 search was not the Glock that he
used to assault his victim. However, not only did the state court amended
information note that the recovered Glock was the same one used in the
assault, but Nichols pled guilty to possessing that particular pistol.

the same common and ongoing scheme — a methamphetamine-linked burglary ring that trafficked in stolen firearms. His possession of the Sterling, Lorcin and Glock qualify as the same course of conduct because there is "sufficient similarity and temporal proximity [among each possession] to reasonably suggest that [the] repeated instances of criminal behavior constitute a pattern of criminal conduct." *United States v. Hahn*, 960 F.2d 903, 910 (9th Cir. 1992) (internal quotation marks omitted). Not only did Nichols possess all three firearms when he committed the July 19 assault — indeed, he was charged in state court with unlawful possession of all three guns — but he also fled to Sinclair's house and hid the guns after committing the assault.

Similarly, Count One of Nichols' federal felon-in-possession charge arises out of the assault and his subsequent arrest, and Nichols admitted that he regularly possessed stolen weapons. Given this evidence, we cannot say that the district court abused its discretion in applying § 2K2.1(b)(5) to enhance Nichols' offense level. *Cf. Brummett*, 355 F.3d at 345 (holding that the defendant's possession of four firearms on three separate occasions within a nine month period "permits a conclusion that the firearms possessions were part of an ongoing series of offenses," and affirming the district court's determination that "all [four] instances of firearm possession . . . were relevant conduct in relation to [the defendant's] offense of conviction," even though only two of the firearms were listed in the indictment); *United States v. Santoro*, 159 F.3d 318, 321 (7th Cir. 1998) (affirming the district court's findings of relevant conduct and enhancement determinations under § 2K2.1(b)(1) where a defendant had possessed an uncharged assault rifle "within a six to nine month period" of his arrest for possession of two other guns); *United States v. Windle*, 74 F.3d 997, 1000-01 (10th Cir. 1996) (holding that a pattern of possessing illegal firearms over a four to five month period is sufficient to constitute the "same course of conduct"); *United States v. Powell*, 50 F.3d 94, 104 (1st Cir. 1995) (holding that "the contemporaneous, or nearly con-

temporaneous, possession of uncharged firearms is . . . relevant conduct in the context of a felon-in-possession prosecution").[5]

**[4]** Because Nichols' possession of the Glock during and after the assault constitutes relevant conduct under § 1B1.3, we hold that the district court properly enhanced his sentence under § 2K2.1(b)(5).[6]

## B.  Reasonableness of Nichols' sentence

Although Nichols asserts that his 57-month sentence was unreasonable, he fails to explain why or how this is so. Instead, he provides a number of reasons why he believes — as the government did at sentencing — that a 30-month sentence would have been reasonable.[7] However, the question before us is not the reasonableness of Nichols' and the government's requested sentence, but rather whether the "*ultimate sentence*" imposed is reasonable in light of the § 3553(a) factors. *See Cantrell*, 433 F.3d at 1279 (emphasis added).

---

[5]Nichols' possession of the Glock may also have constituted relevant conduct under § 1B1.3(a)(1)(A) as an act "committed . . . by the defendant . . . that occurred during the commission of the offense of conviction . . . ." We do not need to resolve this question, however.

[6]Ordinarily, we would proceed to a second inquiry after determining that the prior felony offense constituted relevant conduct, namely, whether the defendant used or possessed the firearm "*in connection with* another felony." *See* U.S.S.G. § 2K2.1(b)(5) (emphasis added). This inquiry requires us to determine whether the defendant used or possessed the gun "in a manner that permits an inference that it facilitated or potentially facilitated — i.e., *had some potential emboldening role*" — in the defendant's felonious conduct. *United States v. Routon*, 25 F.3d 815, 819 (9th Cir. 1994) (emphasis added). However, we need not reach this issue, because Nichols does not dispute that he used the Glock in connection with his prior felony assault.

[7]Although the government agreed with Nichols on this point, at no point did the government concede that a within-guidelines sentence would be *unreasonable*.

**[5]** Section 3553(a) states that a district court should impose a sentence "sufficient, but not greater than necessary" to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant . . . ; and to provide the defendant with needed . . . training, medical care, or other correctional treatment . . . ." 18 U.S.C. § 3553(a)(2). The district court also should weigh factors such as "the nature and circumstances of the offense and the history and characteristics of the defendant;" "the kinds of sentences available;" "the [applicable] sentencing range[;]" the articulated policy goals of the guidelines; "the need to avoid unwarranted sentence disparities" among similar defendants; and "the need to provide restitution to any victims of the offense." § 3553(a)(1), (3) (7). "To comply with the requirements of *Booker*, the district court must have sufficiently considered the Guidelines as well as the other factors listed in § 3553(a). This requirement does not necessitate a specific articulation of each factor separately, but rather a showing that the district court considered the statutorily-designated factors in imposing a sentence." *United States v. Knows His Gun*, 438 F.3d 913, 918 (9th Cir. 2006).

**[6]** Here, the record demonstrates both that the district court sufficiently considered these factors and that Nichols' sentence was not unreasonable.

**[7]** First, as defense counsel conceded at sentencing, Nichols' criminal history is "horrendous." Although only 22 years old, Nichols has numerous prior convictions for crimes involving illegal drug possession, assault and illegal firearm possession, acts and threats of violence and the use of deadly weapons (including firearms, knives and brass knuckles). The district court viewed Nichols' history as "one of complete disregard of the rules that we all live by," noting in particular Nichols' 2003 assault conviction for throwing an eight-year old child across a room and slamming his head into a wall.

This "constant history of violence and . . . violation of court orders" indicated to the court that "the protection of society may well mandate that Mr. Nichols be incarcerated for a very long period of time," a statement that reflects the court's consideration of the need for the sentence to reflect the seriousness of the offense, to promote respect for the law and to protect the public from further crimes of violence.[8]

In addition, the district court emphasized the nature and circumstances of the instant offense, which was part of a large burglary ring, but at the same time considered Nichols' forthrightness in admitting to the crime and the period of time necessary to afford him with needed educational, mental health and drug treatment. Moreover, the record demonstrates that the district court considered the government's recommended sentence.[9] After considering these factors, the district court

[8]Although we agree with most of the district court's observations, we disagree that Nichols presents "the perfect example" of why criminal defendants should be sentenced to "compulsory military training." As the court aptly put it, our criminal justice system should teach convicted criminals that "kicking people when they are down isn't tolerated in our society." However, sending to the military a methamphetamine addict with a disturbing history of violence toward vulnerable and weaker individuals hardly seems an appropriate way to achieve that goal. *See, e.g.*, Jim Dwyer & Robert F. Worth, *Accused G.I. Was Troubled Long Before Iraq*, N.Y. Times, July 14, 2006, at A1 (reporting on criminal history of an American soldier accused of raping and killing civilians in Iraq).

[9]For example, after the government stated that Nichols' youth and addiction to methamphetamine at a very young age counseled against a sentence within the advisory guidelines range, the district court concluded:

> I am absolutely convinced that the appropriate sentence in this case is the high end of the guidelines, 71 months, but I have listened to [the prosecutor], who has been ultimately fair with you, Mr. Nichols, and were it not for [the prosecutor], I would give you the high end of the guidelines. [B]ut because of what [defense counsel] has said and what [the prosecutor] says, I am going to sentence you to the low end of the guidelines and that is not the appropriate sentence, but it is going to be the sentence because of what counsel have recommended to me . . . .

imposed a sentence at the bottom of the advisory guideline range.

**[8]** The district court's approach was reasoned and addressed factors specified in § 3553(a). More importantly, Nichols has not demonstrated that the district court overlooked any significant factor, gave improper weight to any factor or otherwise imposed an unreasonable sentence. It may be that a 30-month sentence *also* would have been reasonable, but the issue here is whether the sentence imposed was *unreasonable*. It was not.

## IV.   Conclusion

**[9]** Because Nichols' possession and use of the Glock handgun in connection with his prior felony assault was relevant conduct under § 1B1.3, the district court did not err in applying a four-level increase under U.S.S.G. § 2K2.1(b)(5). The ultimate sentence imposed was not unreasonable. We therefore AFFIRM the sentence.

**AFFIRMED.**

___

WALLACE, Circuit Judge, concurring:

Although I concur with the result reached by the majority, I write separately because I would follow the Eighth Circuit in holding that the firearm used for enhancement under U.S.S.G. § 2K2.1(b)(5) need not be mentioned in the indictment. The issue raised by the parties is whether the plain meaning of "any firearm" controls, and not whether possession of the Glock constituted relevant conduct. Thus, I would affirm following the Eighth Circuit's statutory interpretation, without reaching the question of whether U.S.S.G. § 1B1.3(a)(2) serves as an alternative to the application of section 2K2.1(b)(5).

"If the language of a guideline is unambiguous, its plain meaning controls." *United States v. Gonzalez*, 262 F.3d 867, 869 (9th Cir. 2001). The guideline states that a defendant's use or possession of "*any* firearm . . . in connection with another felony offense" is grounds for enhancement. U.S.S.G. § 2K2.1(b)(5) (2005) (emphasis added). Reading the phrase "any firearm" as meaning "a firearm mentioned in the indictment" contravenes the plain meaning of the statute.

In *United States v. Mann*, 315 F.3d 1054, 1056-57 (8th Cir. 2003), the Eighth Circuit considered and rejected the argument that "any firearm" under section 2K2.1(b)(5) referred to a firearm mentioned in the indictment. The court pointed out that such a reading would have the odd consequence of "benefit[t]ing those criminals . . . who have the presence of mind to dispose of whatever firearm they used or possessed in connection with another felony before being apprehended." *Id.* at 1057. *See also United States v. Jardine*, 364 F.3d 1200, 1208 (10th Cir. 2004) (relying on *Mann* and holding that enhancement under U.S.S.G. § 2k2.1(c)(1) applies to "*any* firearm or ammunition, . . . even if different from the particular firearm or ammunition upon which defendant's . . . conviction is based") (later vacated and remanded on other grounds); *United States v. Brummett*, 355 F.3d 343, 345 (5th Cir. 2003) (allowing enhancement for firearms not charged in the indictment). The language of the guidelines is unambiguous. The Eighth Circuit's reasoning in *Mann* is persuasive, and I conclude that the phrase "any firearm" means *any* firearm, and not "a firearm mentioned in the indictment." The district court correctly held the same opinion and should be affirmed on that basis. The majority disagrees with the district court holding — I do not.

The majority searches for an alternative method to affirm and rests on a theory embracing relevant conduct under U.S.S.G. § 1B1.3(a)(2). Since the majority believes Nichols's possession of the Glock during and after the assault constituted relevant conduct under section 1B1.3, the majority holds

that the district court properly enhanced his sentence under section 2K2.1(b)(5). This will no doubt come as a surprise to the parties, who never raised the issue. The issue has never been briefed. There is an alternative: I would affirm the district court based on the Eighth Circuit's reasoning in *Mann*.