UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued October 4, 2006
Decided October 27, 2006

**Before**

Hon. JOHN L. COFFEY, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 06-1781

UNITED STATES OF AMERICA,
 *Plaintiff-Appellee,*

    *v.*

THOMAS D. SWEARENGIN,
 *Defendant-Appellant.*

Appeal from the United States
District Court for the Southern
District of Illinois

No. 05-30077-WDS

William D. Stiehl,
*Judge.*

**O R D E R**

Thomas Swearengin was sentenced to a total of 36 months after pleading guilty to two counts of possession of a firearm by a felon. *See* 18 U.S.C. § 922(g)(1). On appeal he challenges the application of an upward adjustment under U.S.S.G. § 2K2.1(b)(5), which provides for a four-level increase if the defendant "used or possessed any firearm or ammunition in connection with another felony offense." The district court found that Swearengin possessed ammunition in connection with a felony drug offense, but Swearengin argues that it was error to base the adjustment on that ammunition because it was not the subject of either § 922(g)(1) count, both of which involved guns. Because the district court did not err in using the ammunition as the basis for applying the adjustment, we affirm.

**I.**

On January 3, 2005, state probation officers searched Swearengin's residence under the terms of his probation. The officers located an unloaded shotgun in his bedroom closet. They then searched Swearengin's garage and found items used to manufacture methamphetamine—empty blister packs of pseudoephedrine, a pill crusher with white powder, a bucket containing lithium batteries, and coffee filters. The officers also located 12.5 grams of methamphetamine, 8.6 grams of marijuana, and two boxes of .357 caliber ammunition in the garage. Swearengin later admitted that he'd been handling a friend's .357 Magnum handgun in the garage not long before the probation officers had arrived. Swearengin was arrested on January 3, but apparently he was released on bond. On January 13, police officers responding to a battery complaint were told by the victim that Swearengin beat him up over guns Swearengin wanted the victim to keep at his residence. On the same day a second victim at a different location advised police that Swearengin had left guns at his residence. Officers retrieved three handguns from the second victim's residence.

Swearengin eventually was turned over to federal authorities and charged with two counts of violating § 922(g)(1). Count 1 charged him with possessing the shotgun retrieved from his bedroom on January 3, and Count 2 charged him with possessing the three handguns located at the second victim's residence on January 13. He entered blind guilty pleas to both counts.

The probation officer who prepared the presentence report recommended that Swearengin's base offense level be increased by four levels under U.S.S.G. § 2K2.1(b)(5), which applies if the defendant "used or possessed any firearm or ammunition in connection with another felony offense." The probation officer made this recommendation because "the defendant possessed a weapon in connection with the possession or manufacturing of methamphetamine in his garage."

Swearengin objected to the recommended four-level increase. He did not dispute the probation officer's assumption that he committed "another felony offense," i.e., the "possession or manufacturing of methamphetamine in his garage." And he conceded that there was "sufficient evidence in the record to establish a connection between the .357 ammunition and/or revolver and the offense of meth manufacturing." He also conceded that this connection "would be enough to apply the enhancement if Mr. Swearengin were convicted of possessing a .357, or .357 ammunition." Swearengin argued, however, that § 2K2.1(b)(5) could not be applied because he was not charged with possessing either the .357 ammunition found in his garage or the .357 Magnum handgun he admittedly possessed there (the handgun was never recovered). Swearengin acknowledged that the language of subsection (b)(5) did not itself mandate that the gun or ammunition underlying the upward adjustment be charged in the indictment, but he reasoned that the

"relevant conduct" guideline, U.S.S.G. § 1B1.3, effectively imposed such a limitation. In making this argument, however, Swearengin narrowly focused on just one of the four separate paragraphs in § 1B1.3(a) that define the scope of relevant conduct: he cited only subsection (a)(1), which encompasses within the definition of relevant conduct those acts and omissions attributable to the defendant "that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense."

The government contended that § 1B1.3(a) did not prevent the district court from considering the uncharged ammunition because subsection (a)(4) of that guideline also encompasses within the definition of relevant conduct "any other information specified in the applicable guideline." And in this case, the government reasoned, the applicable guideline—§ 2K2.1—specifies in subsection (b)(5) that the court should look at whether the defendant possessed *any* firearm or ammunition in connection with another felony offense, not whether he possessed a *charged* gun or ammunition in connection with another offense.

The district court sided with the government and overruled Swearengin's objection, reasoning that "the presence of the firearms in the home, together with the ammunition in the garage in the general area of the drug manufacturing operations, clearly warrants the application of the relevant conduct enhancements of § 1B1.3(a)(4) to this sentence under the specific offense characteristics of § 2K2.1(b)(5)."

## II.

On appeal Swearengin renews his argument that the § 2K2.1(b)(5) enhancement is inappropriate because it does not constitute relevant conduct under subsection (a)(1) of § 1B1.3.[1] He points out that under subsection (a)(1) the other

---

[1] Section 1B1.3(a) provides in relevant part:

Chapters Two (Offense Conduct) and Three (Adjustments). Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level, (ii) specific offense characteristics and (iii) cross references in Chapter Two, and (iv) adjustments in Chapter Three, shall be determined on the basis of the following:

(1)    (A)    all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant;

    . . . .

(continued...)

acts constituting relevant conduct must have occurred "during the commission of the *offense of conviction*, in preparation for *that offense,* or in the course of attempting to avoid detection or responsibility for *that offense*" (emphasis by the defendant). Because the .357 ammunition was not charged, Swearengin argues, its possession was not part of the "offense of conviction" and therefore could not be considered as relevant conduct in applying § 2K2.1(b)(5).

We review the district court's interpretation of the sentencing guidelines de novo. *See United States v. Chamness*, 435 F.3d 724, 726 (7th Cir. 2006). The problem for Swearengin, as the government points out, is that "relevant conduct" includes all acts or omissions falling within *any* of the four subsections of § 1B1.3(a). *See United States v. Soy*, 413 F.3d 594, 613 (7th Cir. 2005). Language in the guidelines that is not specifically defined should be given its plain and ordinary meaning. *See Chapman v. United States*, 500 U.S. 453, 462 (1991); *United States v. Turchen*, 187 F.3d 735, 739 (7th Cir. 1999). And the directive in subsection (a)(4) of § 1B1.3 to look to "any other information specified in the applicable guideline" means that a sentencing court literally may include as relevant conduct "any other information" specified in the applicable guideline. As we have explained, "§ 1B1.3(a) explicates the fundamental rule that relevant conduct must be criminal in nature," but "subsection (a)(4) indicates that each applicable guideline may also specify additional relevant factors." *United States v. Schaefer*, 291 F.3d 932, 939 (7th Cir. 2002); *see also United States v. Lane*, 323 F.3d 568, 591 (7th Cir. 2003).

That is the situation here. The Eighth Circuit recently held in *United States v. Davis*, 360 F.3d 901 (8th Cir. 2004), that § 1B1.3(a)(4) is pertinent in applying § 2K2.1(b)(5). In *Davis* the court of appeals upheld a district court's determination that the defendant's involvement in a carjacking ten days before his possession of the gun that led to his § 922(g)(1) conviction counted as "another felony offense" for purposes of § 2K2.1(b)(5). *Id.* at 903. The defendant argued that the carjacking could not count as "another felony offense" under § 2K2.1(b)(5) because it did not

---

[1](...continued)
that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.

(2)     solely with respect to offenses of a character for which § 3D1.2 would require grouping of multiple counts, all acts and omissions described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction;

(3)     all harm that resulted from the acts and omissions specified in subsections (a)(1) and (a)(2) above, and all harm that was the object of such acts and omissions; and

(4)     any other information specified in the applicable guideline.

occur contemporaneously with the offense of conviction, arguing—as does Swearengin—that § 1B1.3(a)(1) limits what can be considered under § 2K2.1(b)(5) to acts or omissions that occurred during, in preparation for, or while attempting to avoid detection of the offense of conviction. *Id.* The Eighth Circuit rejected this argument, concluding that relevant conduct also includes, pursuant to § 1B1.3(a)(4), "any other information specified in the applicable guideline." *Id.* The court reasoned that the applicable guideline, § 2K2.1(b)(5), directed a four-level increase if a firearm was possessed in connection with "another felony offense" without regard to whether the other felony offense occurred contemporaneously with the offense of conviction. *Id.*

The opinion in *Davis* fully supports the district court's application of § 2K2.1(b)(5) in this case. Section 1B1.3(a)(4) is unambiguous in that it states that factors specified in the applicable guideline shall be considered by the judge. The applicable guideline—§ 2K2.1—specifies in subsection (b)(5) that a four-level increase is appropriate so long as the defendant possessed "any firearm or ammunition" in connection with the other felony offense. Swearengin possessed ammunition, and he conceded at sentencing both that the drug-related activity in his garage qualified as "another felony," and that a sufficient connection existed between that activity and the ammunition. Thus, the upward adjustment under § 2K2.1(b)(5) applied.

In addition to its decision in *Davis*, the Eighth Circuit also has held that the firearm or ammunition relevant to an upward adjustment under § 2K2.1(b)(5) need not be charged in the indictment. In *United States v. Mann*, 315 F.3d 1054, 1057 (8th Cir. 2003), the court held that § 2K2.1(b)(5) applies to the use or possession of any firearm, not just the one on which the defendant's conviction under § 922(g) is based. The majority reasoned that the language of the guideline—particularly the use of "*any* firearm" instead of "*the* firearm"—plainly means that the gun attached to the offense of conviction needn't be one in the same with the one connected to the second felony. *Id.* at 1056. *See also United States v. Williams,* 431 F.3d 767, 770 (11th Cir. 2005); *United States v. Settle*, 414 F.3d 629, 633-34 (6th Cir. 2005); *United States v. Jardine*, 364 F.3d 1200, 1208 (10th Cir. 2004) (same conclusion under analogous provision of guidelines).

### III.

For the foregoing reasons, we AFFIRM Swearengin's sentence.